UNITED STATES BANKRUPTCY COURT    HEARING DATE: June 17, 2003
DISTRICT OF COLUMBIA    TIME: 10:30 A.M. p.m.

- - - - - - - - - - - - - - - - - - - -

In re    ) Chapter 11
    )
GREATER SOUTHEAST COMMUNITY    ) Case Nos. 02-02250
HOSPITAL CORPORATION I, et al.,    )
    )
    Debtors.    ) Jointly Administered
    )

**FILED**

**MAY 2 0 2003**

Denise H. Curtis, Clerk
U.S. Bankruptcy Court for D.C.

- - - - - - - - - - - - - - - - - - - -

**FIRST INTERIM APPLICATION OF CAIN BROTHERS,
INVESTMENT BANKER FOR THE DEBTORS AND DEBTORS IN POSSESSION,
FOR ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED
AND REIMBURSEMENT OF EXPENSES INCURRED FOR THE PERIOD
November 20, 2002 THROUGH March 31, 2003**

TO:  THE HONORABLE S. MARTIN TEEL, JR.,
    UNITED STATES BANKRUPTCY JUDGE:

**Summary Sheet**

| | |
|---|---|
| Name of Applicant: | Cain Brothers & Company, LLC ("Cain Brothers" or "Applicant") |
| Authorized to Provide Professional Services to: | Debtors and Debtors-In-Possession (collectively, the "Debtors") |
| Date of Formal Retention: | November 27, 2002 |
| Period for which compensation and reimbursement is sought: | November 20, 2002 Through March 31, 2003 ("Fee Period") |
| Amount of Compensation sought as actual, reasonable and necessary: | $ 551,337.50 |
| Amount of Fee Period Compensation Previously Paid Pursuant to the Court's January 16, 2003 Administrative Order (the "Administrative Order") | $ 326,870.00[1] |

---

[1] Fees received represent eighty (80) percent of fees requested in the Monthly Fee Statements for the periods November 20, 2002 through February 28, 2003 (the "February Fee Statement"). The monthly fee statement for the period March 1, 2003 though March 31, 2003 ("the March Fee Statement") was submitted to the Debtors on April 20, 2003. The fees requested in the March Fee Statement are $142,750.00. At the time of this filing, Cain Brothers has not received 80% payment of those fees or any expenses.

719

## Summary Sheet (cont)

Amount of Expenses
Reimbursement sought as actual,
reasonable and necessary:                    $ 28,564.48

Amount of Fee Period Expense                 $ 23,382.36[2]
Reimbursement Previously Paid
Pursuant to the Administrative
Order:

---

[2] Expenses received represent one hundred (100) percent of expenses requested in
the February Fee Statement.   The expenses originally requested in the March Fee
Statement were $11,257.12, which was in error.   The actual expenses incurred during
the March Fee Period were $5,182.12.   At the time of this filing, Cain Brothers has
not received 80% payment of those fees or any expenses.

```
UNITED STATES BANKRUPTCY COURT      HEARING DATE:  _____, 2003
DISTRICT OF COLUMBIA                TIME:      _____ p.m.
--------------------------------
In re                           )   Chapter 11
                                )
GREATER SOUTHEAST COMMUNITY      )   Case Nos. 02-02250
HOSPITAL CORPORATION I, et al.,  )
                                )
                 Debtors.       )   Jointly Administered
                                )
--------------------------------
```

**FIRST INTERIM APPLICATION OF CAIN BROTHERS,
INVESTMENT BANKER FOR THE DEBTORS AND DEBTORS IN POSSESSION,
FOR ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED
AND REIMBURSEMENT OF EXPENSES INCURRED FOR THE PERIOD
November 20, 2002 THROUGH March 31, 2003**

TO:   THE HONORABLE S. MARTIN TEEL, JR.,
      UNITED STATES BANKRUPTCY JUDGE:

Cain Brothers & Company, LLC ("Cain Brothers"), as investment banker to the Doctors Community Healthcare Corporation, files its first application (the "Fee Application" or "Application") for allowance of interim compensation for professional services rendered from November 20, 2002 through March 31, 2003 (the "First Interim Period"), and for reimbursement of expenses incurred in connection with such services, and respectfully represents as follows:

**FEES AND EXPENSES FOR WHICH ALLOWANCE IS SOUGHT:**

Cain Brothers is a limited liability corporation engaged in the practice of financial advisory and investment banking. Cain Brothers submits this First Fee Application pursuant to sections 330(a) and 331 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2016-1 of the Local Rules of the United States Bankruptcy Court for the District of Columbia (the "Local Rules") for allowance of interim compensation for professional services rendered to the Committee in the aggregate amount of $551,337.50.

The Court has not previously awarded Cain Brothers compensation in this case.

The name, billing rates, blended billing rates, number of hours billed and total billing for each person who billed time during the First Interim Period are contained in the chart annexed to this fee application ("Fee Application" or "Application") as Exhibit "A". A detailed time sheet analysis reflecting hours billed for the First Interim Period can be found as Exhibit "B". The time spent preparing the fee application for the First Interim Period is not included in the total hours described in the fee application.

In addition, in accordance with Local Rule 2016-1(h), Cain Brothers must include a list of bankers that spent more than 12 hours on the matter in a single day. As of March 31, 2003 no Cain Brothers banker had worked more than 12 hours in any single day on the matter.

The Fee Application also seeks reimbursement of expenses in the aggregate amount of $28,564.48 incurred in connection with the providing of such services for the First Interim Period. A schedule specifying categories of expenses and a detailed record of the expenses for which Cain Brothers is seeking reimbursement during the First Interim Period and the total dollar amount requested for each such category is attached hereto as Exhibit "C".

**BACKGROUND**

1. Doctors Community Healthcare Corporation ("DCHC") is a privately-held healthcare management company organized under the laws of the State of Delaware with its corporate offices located in Scottsdale, Arizona. DCHC manages and owns, directly and indirectly, five health care facilities located in California, Illinois and Washington, D.C. The five facilities are: Greater Southeast Community Hospital, Hadley Memorial Hospital, Michael Reese Hospital, Pacifica Hospital of the Valley and Pine Grove Hospital (collectively the "Debtors").

2. On November 20, 2002 (the "Commencement Date"), the Debtors each commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). Each of the Debtors continues to operate its business and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. The Debtors' chapter 11 cases (the "Cases") have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules").

4. On or about November 25, 2002, the Office of the United States Trustee for the District of Columbia appointed an official committee of unsecured creditors in the Debtors' chapter 11 cases (the "Creditors' Committee").

5. On January 16, 2003, the Court entered an order allowing the interim compensation of professionals (the "Administrative

Order".) During the First Interim Cain Brothers submitted fees and expenses to the Debtors on a monthly basis (the "Monthly Fee Statements") in the aggregate amount of $551,337.50 in fees and $28,564.48 in expenses. To date, Cain Brothers has received eighty (80) percent of the fees requested on the February Monthly Fee Statement and one hundred (100) percent of the expenses requested on the February Monthly Fee Statement. At the time of this filing, Cain Brothers has not received payment of the fees or expenses requested in the March Fee Statement.

**TASK-BASED BILLING ANALYSIS OF FEES**

In accordance with Local Rule 2016-1, Cain Brothers has divided its time into project, or task, categories. The following narrative describes the tasks undertaken and current status of the work.

6. **Valuation Related** - Cain Brothers billed a total fee of $200,000.00, for work related to the valuation of the DCHC facilities. A copy of the Engagement Letter, as amended, is annexed hereto as Exhibit "D". Listed below are the services rendered relating to this task category:

(a) Conducted site visits and interviewed management at each of the Debtor Facilities to discus the historical business operations, business prospects, and anticipated financial performance, and taken into account the programs and services, competitive position, financial profile, and medical staff and provider relationships of the Facilities; (b) Reviewed unaudited financial statements, year-to-date financials, and statistical

and operational data provided by management; (c) Reviewed and analyzed the 2003 financial forecasts prepared by management; (d) Met with members of management to discuss the background, current business activities, methods of operations, historical and current financial performance, the current business environment, competition, and its future prospects for growth for each of the facilities; (e) Reviewed market area of each facility and competition; (f) Considered financial and other publicly available information concerning certain other comparable hospital management companies and the trading markets for those companies' securities; (g) Considered the implications of national and local trends in the health care industry, specifically as they may impact each of the local markets; (h) Held discussions with audit partner from Ernst & Young; (i) Prepared and completed a separate valuation for each of the Debtor's facilities and then combined the separate valuations for each facility to help derive an overall valuation; (j) Held meetings with the Debtor's management team, Huron Consulting and Weil, Gotshal & Manges to discuss results of the valuation analysis; (k) Held meetings with the Creditor's Committee to discuss valuation results; (l) Held meetings with representatives of National Century Financial Enterprises ("NCFE") to discuss valuation results and timing of a potential sale of the facilities.

7.   **Debtor In Possession Financing Related** - Cain Brothers billed 335 hours, totaling $164,450.00, to this task category.

Listed below are the services rendered relating to this task category:

(a) Began preliminary research into Debtor In Possession ("DIP") providers; (b) In conjunction with Debtor Management, Huron Consulting, and Weil, Gotshal & Manges, calculated Debtor's immediate funding needs to begin the DIP financing process; (c) Contacted DIP providers about obtaining proposals for Debtor DIP funding; (d) Held conference calls and met with Debtor Management, Huron Consulting, and Weil, Gotshal & Manges, to plan strategy, develop funding needs, develop borrowing base, and evaluate the DIP proposals; (e) Negotiated with DIP providers to obtain more favorable terms for Debtor; (f) Worked with Huron Consulting to analyze the proposed DIP covenants and to develop alternatives to be proposed to the DIP lender; (g) Held meetings and calls with NCFE and Creditors Committee to go over current status of DIP Financing and preliminary sale process; (h) Appeared in Bankruptcy Court hearings regarding DIP financing; and, (i) responding to almost daily requests from the Creditors Committee and NCFE for documents and other information.

8.   **Sales Process Related** - Cain Brothers billed a total fee of $105,000.00, for work related to the Sales Process. The fee represents an aggregate of three (3) monthly retainers agreed to in the Engagement Letter which is annexed hereto as Exhibit "D". Listed below are the services rendered relating to this task category:

(a) Developed form of Confidentiality Agreement to be used in the sales process; (b) Conducted site visits and interviewed management at each of the Debtor Facilities to discus the historical business operations, business prospects, and anticipated financial performance, and taken into account the programs and services, competitive position, financial profile, and medical staff and provider relationships of the Facilities; (c) Developed and maintained a list of potential buyers of debtor facilities. Created log of unsolicited potential buyers based on calls received; (d) Gathered data on each facility for "data room" located in Washington D.C., and at the various facilities; (e) Visited data room and created log of all contents of the data room; (f) Began sale process on Greater Southeast Community Hospital ("GSCH"), Hadley Memorial Hospital ("Hadley"), Michael Reese Hospital ("MRH"), Pine Grove Hospital ("Pine Grove"), and Pacifica of the Valley Hospital ("Pacifica"); (g) Held discussions with Vanguard, and other potential buyers on additional data items; (h) Developed confidential descriptive memorandums for each facility; (i)Developed an actual process and corresponding timeline in conjunction with Weil, Gotshal & Manges and Debtor Management; (j) Held discussions with DCHC management and each facility's management about confidential descriptive memorandums; (k)Finalized and produced copies of confidential descriptive memorandums; (l) Held meetings and calls with Creditors Committee to go over status of sales process and identify potential buyers; (m) Held meetings and calls with NCFE

to go over status of sales process and identify potential buyers;.

9. **General Advisory Related** - Cain Brothers billed 156.25 hours, totaling $81,887.50, to this task category. In this phase of our engagement, Cain Brothers has assisted DCHC and its other professional advisors in meeting and negotiating with other parties related to both the DCHC and the NCFE bankruptcy cases with a goal of maximizing the value of the estate. Listed below are the services rendered relating to this task category:

(a) Participated in strategic meetings/calls with Debtors, Weil, Gotshal & Manges, and Huron Consulting to develop strategies with respect to the i) DIP financing, strategy, and negotiation; ii) potential alternatives, including the sales process and recapitalization; iii) a standstill agreement with NCFE; iv) financial reorganization; v) updated forecasts and risk assessment; vi) overall business assessment; vi) dealings with local and national regulatory bodies (including JCAHO and Washington D.C. Department of Health); vii) strategies to maximize value of the Debtor's estate; (b) traveled to Scottsdale, AZ to meet with management to discuss the bankruptcy case and strategies to maximize value; (c) traveled to each of the five facilities and held discussions with local management on behalf of or with DCHC corporate management; (d) Held meetings with DCHC management, Huron Consulting and Weil, Gotshal & Manges to develop strategies with respect to recapitalization vs. timing of the sales process; (e) assisted in developing the Key Employee

Retention Program; (f) Met with Greater Southeast Community Hospital to discuss strategy with respect to JCAHO accreditation and relationship with the D.C. Department of Health; and, (g) Facilitated meetings with the "business" decision makers for both NCFE and the Creditors Committee.

## EXPENSES

Cain Brothers submits that the following expenses for which reimbursement is sought are of a kind and at a rate customarily charged to and collected from other clients and are reasonable under the circumstances of these cases. A schedule specifying categories of expenses and a detailed record of the expenses for which Cain Brothers is seeking reimbursement during the First Interim Period and the total dollar amount requested for each such category is attached hereto as Exhibit "C".

10. **Out of Town Travel** - Cain Brothers has incurred a number of expenses related to out of town travel. The Fee Application includes the following amounts: (a) $12,802.30 for airfare; (b) $4,217.39 for ground transportation; (c) $7,705.60 for hotel/lodging; (d) $1,070.24 for business meals.

11. **Photocopying/Printing** - Cain Brothers Fee Application includes $262.25 for photocopying and printing. As Investment Bankers to the Debtors, Cain Brothers is responsible for printing

and photocopying numerous documents, both black & white and color, related to the sales process, i.e. the Confidentiality Agreements, the Confidential Descriptive Memorandums, the Memorandums Cover Letters, etc…

With respect to photocopying expenses, Cain Brothers charges all of its clients $0.10 per page for a black & white print, and $1.00 per page for a color print.

12. **Telephone/Conference Calls** - Cain Brothers Fee Application includes $1,968.50 for telephone calls and hosting conference calls. Due to the complex process of obtaining the DIP financing for the Debtors, Cain Brothers has had to make calls and participate and host daily conference calls to discuss the valuation work, the DIP process, the sales process, and general advisory work. Also, Cain Brothers is responsible for contacting each potential bidder for each of the Debtors facilities. Due to the location of the potential bidders, a majority of the daily sales calls made have been long distance.

13. **Courier/Messenger Services** - Cain Brothers Fee Application includes $518.70 for courier/messenger services. As Investment Banker to the Debtors, Cain Brothers is responsible for sending the Confidential Descriptive Memorandums to potential bidders. Due to the time sensitivity of the sales process, many of the documents have had to be sent overnight delivery to ensure the bidders have as much time as possible to go over the information before the bids are due.



14. **Database Services** – Cain Brothers Fee Application includes $19.50 for the use of outside database services used in the valuation assignment.

## CONCLUSION

The investment banking services summarized by this Application and rendered by Cain Brothers on behalf of the Debtors during the First Interim Period were reasonable and necessary to the Debtors in the preservation and maximization of the Debtors' estates for the creditors.

As noted above, the amounts sought by Cain Brothers consist only of actual and reasonable billable time expended by investment bankers ($551,337.50) and court approved monthly retainer fees paid for service rendered in the sales process and actual and necessary expenses made by Cain Brothers ($28,564.48) during the First Interim Period. As demonstrated throughout this Application, the compensation requested by Cain Brothers is necessary, fair, and reasonable and is authorized under the relevant provisions of the Bankruptcy Code.

WHEREFORE, Cain Brothers respectfully requests that this Court enter an order (a) awarding to Cain Brothers. (i) interim compensation for the period November 20, 2002 through March 31, 2003 in the amount of $551,337.50 representing actual billable time for services rendered by Cain Brothers as investment banker to the Debtors, (ii) reimbursement of actual and necessary expenses incurred and recorded by Cain Brothers during the period November 20, 2002 through March 31, 2003 in the amount of $28,564.48, (b) directing the Debtors to pay the foregoing amounts, and (c) granting such other and further relief as this Court deems just and proper.

Dated: May 8, 2003

Respectfully submitted,
Cain Brothers & Company, LLC

By: _____
Thomas M. Barry
452 Fifth Avenue, 25th Floor
New York, NY 10018
Telephone: 212-869-5600
Facsimile: 212-869-6418

Investment    Banker    to    the
Debtors

DC Bar No. 452442

## Paper and Electronic Service List

Paul Tuft
Doctors Community Healthcare Corp.
6730 North Scottsdale Rd, Suite 290
Scottsdale, AZ 85253
paul.tuft@doctorscommunity.com


Deryck A. Plamer, Esq.
Weil, Gotshall & Manges, LLP
767 Fifth Ave
New York, NY 10153
(Counsel for Debtors)
deryck.palmer@weil.com


Michael Bernstein, Esq.
Charles A. Malloy, Esq.
Arnold & Porter
555 12th St, NW, 7th Fl
Washington, DC 20004
(Counsel for Health Care REIT, Inc)
Michael_Bernstein@aporter.com
Charles_malloy@aporter.com


Kevyn D. Orr, Esq.
Jones, Day, Reavis & Pogue
51 Louisiana Ave, NW
Washington, DC 20001
(Counsel for NCFE Debtors)
korr@jonesday.com


B. Amon James, Esq.
Office of the U.S. Trustee
115 S. Union Street, Rm 210
Alexandria, VA 22314
b.amon.james@usdoj.gov

# EXHIBIT "A"

## SUMMARY SHEET

November 20, 2002 Through March 31, 2003

LIST OF CAIN BROTHERS PROFESSIONALS

| Name of Professional Person | Position with the Applicant | Hourly Billing Rate | DIP Related Hours | General Advisory Related Hours | Total Compensation |
|---|---|---|---|---|---|
| | | | | | |
| Thomas M. Barry | Principal | $550.00 | 236.00 | 136.00 | $ 204,600.00 |
| Edward Fishman[1] | Principal | $500.00 | | | |
| Carsten Beith[1] | Principal | $500.00 | | | |
| James Marrow[1] | Principal | $500.00 | | | |
| Jay Harris[1] | Vice President | $400.00 | | | |
| Martin Sieckman[1] | Vice President | $350.00 | | | |
| Brian Singer | Vice President | $350.00 | 71.50 | 20.25 | $ 32,112.50 |
| Todd Rudsenske | Vice President | $350.00 | 27.50 | 0.00 | $ 9,625.00 |
| Jennifer Cross[1] | Associate | $250.00 | | | |
| Christopher McDonough[1] | Senior Analyst | $200.00 | | | |
| | | | | | |
| | Total of Billed Hours | | 335.00 | 156.25 | |
| | Blended Hourly Rate for Professionals | $395.00 | | | |
| | Total Compensation for DIP Related Work | | | | $ 164,450.00 |
| | Total Compensation for General Advisory Work | | | | $ 81,887.50 |
| | Total Compensation for Valuation Work[2] | | | | $ 200,000.00 |
| | Total Compensation for Sale Related Work[3] | | | | $ 105,000.00 |
| | **Grand Total Compensation for First Interim Period** | | | | **$ 551,337.50** |

(1) Employees involved but not billed on an hourly basis during the First Interim Period.

(2) Per Cain Brothers Engagement Letter dated 3/17/03 (see Exhibit "D"), work related to valuation was not billed on an hourly basis. A $200,000.00 fee related to Valuation Work was agreed upon.

(3) Per Cain Brothers Engagement Letter dated 3/17/03 (see Exhibit "D"), a $35,000.00 monthly retainer fee related to Sales Related Work was agreed upon, $105,000 represents 3 months @ $35,000/month.

**DOCTORS COMMUNITY HEALTHCARE CORPORATION**
Billable Hours Time Sheets by Professional
November 20, 2002 Through February 28, 2003

| Date | DIP Related | General Advisory | Total Time[1] | Description |
|---|---|---|---|---|
| **Thomas Barry, Principal** | | | | |
| 12/13/02 | | 4.00 | 4.00 | Several conference calls with working group (Weil, Huron, DCHC, CB) to discuss strategic options with respect to NCFE & creditors and implications of bankruptcy remote entities, true sale issue and next steps. |
| 12/17/02 | 4.00 | 1.00 | 5.00 | Conference call with working group to discuss and review DIP proposals and overall strategy. |
| 12/19/02 | | 8.00 | 8.00 | In Chicago, IL for meetings at Michael Reese Hospital. |
| 12/19/02 | | 6.00 | 6.00 | In Chicago, IL for meetings at Michael Reese Hospital. |
| 12/26/02 | | 8.00 | 8.00 | In Phoenix, AZ for strategy sessions with DCHC management. |
| 12/27/02 | | 7.00 | 7.00 | In Phoenix, AZ for strategy sessions with DCHC management. |
| 01/02/03 | 4.00 | | 4.00 | Multiple calls and emails with both working group and lenders regarding the DIP status. |
| 01/03/03 | 3.00 | 1.00 | 4.00 | Multiple calls and emails with both working group and lenders regarding the DIP status. |
| 01/06/03 | | 3.00 | 3.00 | Prepare for meeting with Creditors Committee in Washington, DC. |
| 01/07/03 | 3.00 | 3.00 | 6.00 | In Washington, DC for Unsecured Crediors meeting, spent time with working group strategizing about the general strategy and DIP process. Met with DIP Lender |
| 01/08/03 | 3.00 | | 3.00 | Had multiple calls and emails regarding the DIP status, and Fee Appraisal Hearing. |
| 01/09/03 | 4.00 | | 4.00 | Held conference call to discuss creditors committee concerns, NCFE update and DIP update. |
| 01/10/03 | 4.00 | 1.00 | 5.00 | Multiple calls and emails with both working group and lenders regarding the DIP status. |
| 01/12/03 | 2.00 | | 2.00 | Multiple calls and emails with both working group and lenders regarding the DIP status. |
| 01/13/03 | 5.00 | 2.00 | 7.00 | Meeting at Huron with NCFE (Lane & Coles) to talk through general strategy and update . Conference calls on DIPS.  Work on borrowing base calculation |
| 01/14/03 | 3.00 | | 3.00 | Had multiple calls with working group and lenders regarding the DIP status. |
| 01/15/03 | 6.00 | | 6.00 | Had multiple calls and emails regarding the DIP status, and Fee Appraisal Hearing. |
| 01/16/03 | 5.00 | 2.00 | 7.00 | Conference call with NCFE to discuss standstill agreement; conference call with Huron and GE Capital to discuss DIP proposal; review proposed standstill agreement; Working group conference call to discuss standstill internally in advance of call with NCFE and lawyers; Conference call with NCFE and attorneys to discuss Standstill agreement |
| 01/17/03 | 5.50 | | 5.50 | Had multiple calls and emails regarding the DIP status. |
| 01/19/03 | 2.00 | | 2.00 | Had multiple calls and emails regarding the DIP status. |
| 01/20/03 | 4.00 | | 4.00 | Reviewed and summarized DIP proposals in advance of conference call with working group to discuss the DIP. |
| 01/21/03 | 4.00 | | 4.00 | Conference call with GE on DIP proposal. |
| 01/22/03 | 3.00 | | 3.00 | Conference call with GE on DIP proposal. |
| 01/23/03 | 6.00 | | 6.00 | Conference calls with Foothills, LaSalle/Merrill and GE Capital on DIP proposals. Analyze, review DIP proposals. |
| 01/24/03 | 1.00 | 3.00 | 4.00 | Held call with working group to discuss strategic alternatives and DIP; call with Creditors Committee to update them on the process. |
| 01/25/03 | 3.00 | | 3.00 | Had multiple calls and emails regarding the DIP status. |
| 01/26/03 | 2.00 | | 2.00 | Had multiple calls and emails regarding the DIP status. |
| 01/27/03 | 4.00 | | 4.00 | Had multiple calls and emails regarding the DIP status. |
| 01/28/03 | 4.50 | | 4.50 | Had multiple calls and emails regarding the DIP status. |
| 01/29/03 | 8.00 | | 8.00 | Call with GE, LaSalle/Merrill, and Foothill to discuss DIP proposals. |
| 01/30/03 | 2.00 | 2.00 | 4.00 | Held calls with working group to discuss strategy, DIP |
| 02/03/03 | 2.00 | | 2.00 | Calls reg. Strategy & DIP |
| 02/04/03 | 3.00 | | 3.00 | Calls reg. DIP |
| 02/05/03 | 4.00 | | 4.00 | Had multiple calls and emails regarding the DIP status. |
| 02/06/03 | 4.00 | | 4.00 | Held calls with working group to discuss DIP. |
| 02/07/03 | 4.00 | 2.00 | 6.00 | Held call to discuss Standstill agreement, DIP proposal, respond to NCFE requests. |

EXHIBIT "B"

**DOCTORS COMMUNITY HEALTHCARE CORPORATION**
Billable Hours Time Sheets by Professional
November 20, 2002 Through February 28, 2003

| Date | DIP Related | General Advisory | Total Time[1] | Description |
|---|---|---|---|---|
| 02/10/03 | 3.00 | 1.00 | 4.00 | Held calls with working group to discuss strategy, DIP, Standstill. |
| 02/11/03 | 2.00 | | 2.00 | Call with working group to discuss DIP and specifically Provident issue; Prepare for final DIP submission. Contacted the three DIP lenders. Prepare strategy to discuss/choose winning DIP with input from creditors committee and NCFE. Review current proposals/commitments |
| 02/12/03 | 3.00 | | 3.00 | Had multiple calls and emails regarding the DIP status. |
| 02/13/03 | 6.00 | | 6.00 | Held calls with working group and with DIP lenders. Reviewed new proposal from LaSalle Merrill. Back and forth with GE, Foothills LaSalle/Merrill. Ongoing, fluid analysis of DIP proposals, borrowing base, legal issues, etc. |
| 02/14/03 | 5.50 | | 5.50 | Multiple calls with working group, Creditors committee (Neil) choosing/negotiating DIP. Calls with LaSalle/Merrill and GE Capital. Explain process and advisor's analysis of DIP proposals. Receive new commitment from GE Capital. |
| 02/17/03 | 2.00 | | 2.00 | Calls with GE Capital and NCFE. |
| 02/18/03 | 6.00 | | 6.00 | Calls with NCFE. |
| 02/19/03 | 3.00 | | 3.00 | Call with Huron & GE to discuss financial covenants. Reviewed borrowing base calculation and financial covenant testing & sensitivity analysis for DIP. |
| 02/20/03 | 2.00 | | 2.00 | Had multiple calls and emails regarding the DIP status. |
| 02/21/03 | 2.50 | | 2.50 | Working group call to provide update on all areas - DIP, 341 meeting JCAHO, Standstill, etc. |
| 02/24/03 | 3.00 | | 3.00 | Reviewed and discussed latest GE Capital commitment letter. |
| 02/25/03 | 3.00 | | 3.00 | Working group call to update everyone on current DIP process, cash collateral with NCFE, next court dates etc... |
| 02/26/03 | 4.00 | | 4.00 | Had multiple calls and emails regarding the DIP status. |
| 02/27/03 | 4.00 | 2.00 | 6.00 | Held calls with working group to discuss DIP, strategy. |
| 02/28/03 | 3.00 | | 3.00 | Had multiple calls and emails regarding the DIP status. |
| **Total** | **164.00** | **56.00** | **220.00** | |

**Brian Singer, Vice President**

| Date | DIP Related | General Advisory | Total Time | Description |
|---|---|---|---|---|
| 12/13/02 | | 2.50 | 2.50 | Conference calls with working group (Weil, Huron, DCHC, CB) to discuss strategic options with respect to NCFE & creditors and implications of bankruptcy remote entities, true sale issue and next steps. |
| 12/17/02 | 2.75 | | 2.75 | Conference call with working group to discuss DIP proposals, review DIP proposals |
| 01/06/03 | | 2.00 | 2.00 | Prepare for unsecured creditors meeting in D.C. |
| 01/07/03 | | 3.00 | 3.00 | In Washington, DC for Unsecured Crediors meeting, spent time with working group strategizing about the general strategy and DIP process. |
| 01/09/03 | 0.50 | | 0.50 | conference call to discuss Committee concerns, NCFE update and DIP update |
| 01/13/03 | 1.50 | 2.50 | 4.00 | Meeting at Huron with NCFE (Lane & Coles) to talk through general strategy and update . Conference call re: DIP, work on borrowing base calc. |
| 01/16/03 | 2.50 | | 2.50 | Conference call with NCFE to discuss standstill agreement. conference call with Huron and GE Capital to discuss DIP proposal. Review Standstill agreement. Conference call with NCFE and attorneys to discuss Standstill agreement |
| 01/20/03 | 3.75 | | 3.75 | review, summarize DIP proposals in advance of call, conference call with working group to discuss DIP strategy. Conference call with GE on DIP. |
| 01/21/03 | 2.00 | | 2.00 | conference call with GE on DIP. Review DIP |
| 01/23/03 | 1.50 | | 1.50 | conference call with Foothills, LaSalle/Merrill, GE Capital |
| 01/24/03 | 1.00 | 0.75 | 1.75 | Working group to discuss strategic alternatives, Call with Creditors committee - update on process |
| 01/29/03 | 1.00 | | 1.00 | Call with GE on DIP. Call with LaSalle/Merrill on DIP |
| 02/07/03 | 0.50 | | 0.50 | call on Standstill agreement |

**DOCTORS COMMUNITY HEALTHCARE CORPORATION**
Billable Hours Time Sheets by Professional
November 20, 2002 Through February 28, 2003

| Date | DIP Related | General Advisory | Total Time[1] | Description |
|------|---------|---------|-------|-------------|
| 02/11/03 | 2.50 | 1.25 | 3.75 | Call with NCFE (Ron Winters) re: Provident. Call with working group to discuss DIP and specifically Provident issue. Prepare for final DIP submission. Contact 3 DIPS. Prepare strategy to discuss/choose winning DIP with input from creditors committee and NCFE. Review current proposals/commitments |
| 02/13/03 | 6.00 | 1.00 | 7.00 | Multiple calls with working group and with DIP lenders. Review new proposal from LaSalle Merrill. Back and forth with GE, Foothills LaSalle/Merrill. Ongoing, fluid analysis of DIP proposals, borrowing base, legal issues, etc. |
| 02/14/03 | 6.00 | | 6.00 | Multiple calls with working group, Creditors committee (Neil) choosing/negotiating DIP. Calls with LaSalle/Merrill and GE Capital. Explain process and advisor's analysis of DIP proposals. Receive new commitment from GE Capital. |
| 02/15/03 | 0.50 | | 0.50 | Review new GE proposal |
| 02/17/03 | 1.50 | | 1.50 | Call with GE Capital. Call with NCFE to discuss DIP |
| 02/18/03 | 0.50 | | 0.50 | Call with NCFE - DIP |
| 02/19/03 | 1.25 | | 1.25 | Call with Huron & GE to discuss financial covenants. Review borrowing base calc and financial covenant testing & sensitivity analysis |
| 02/21/03 | 0.25 | | 0.25 | Working group call to provide update on all areas - DIP, 341 meeting JCAHO, Standstill, etc. |
| 02/23/03 | 1.25 | | 1.25 | Conference call with working group to discuss status of DIP negotiations, action plan for next 90 days. Review latest GE Capital Commitment Letter |
| 02/25/03 | | 0.50 | 0.50 | Working Group call re: update current DIP process , Cash collateral NCFE, next court dates etc. |
| **Total** | **36.75** | **13.50** | **50.25** | |

[1] Schedule represents billable hours related to general advisory and work related to the DIP financing. This schedule does not reflect time spent on the Sales Process for which Cain Brothers is paid a monthly retainer and Sales Success Fee.



EXHIBIT "B" (contd.)

**DOCTORS COMMUNITY HEALTHCARE CORPORATION**
Billable Hours Time Sheets by Professional
March 1, 2003 Through March 31, 2003

| Date | DIP Related | General Advisory | Total Time[1] | Description |
|---|---|---|---|---|
| **Thomas Barry, Principal** | | | | |
| | | | 8.00 | Held multiple calls with NCFE and DCHC and working group to review DIP documents. |
| 03/03/03 | 8.00 | | | Respond to information requests. |
| | | | 8.00 | Held calls with Navigant and NCFE to discuss the DIP. Respond to information requests. |
| 03/04/03 | 8.00 | | | |
| | | 8.00 | 8.00 | DCHC documents review. Weil's NYC office for meeting and call (N.Demchick/S.Hicks |
| 03/05/03 | | | | call) |
| 03/06/03 | 8.00 | | 8.00 | Travel to D.C., Weil office re. DIP & with DC gov't |
| 03/07/03 | 6.00 | | 6.00 | Multiple calls with working group to and Creditors/NCFE to discuss DIP. |
| 03/10/03 | 6.00 | | 6.00 | Held multiple calls with the working group and DIP lenders. |
| 03/11/03 | 6.00 | | 6.00 | Held multiple calls with the working group to discuss the DIP. |
| 03/12/03 | | 8.00 | 8.00 | Travel to DC. Meetings with DCHC, Huron, Weil. Multiple calls. |
| 03/13/03 | | 6.00 | 6.00 | DCHC rehearsal. Status update presentaiton. |
| | | | 8.00 | Attended meetings in Washington, DC with GE Capital, Creditors Committee, and NCFE. |
| 03/14/03 | 8.00 | | | |
| 03/17/03 | 4.00 | | 4.00 | Held multiple calls with the working group to discuss the DIP. |
| 03/18/03 | | 6.00 | 6.00 | DCHC call with Creditors/document review/calls. Respond to information requests. |
| 03/19/03 | 2.00 | 6.00 | 8.00 | Reviewed DIP documents. Held conference calls to discuss strategy. |
| 03/20/03 | | 4.00 | 4.00 | Review with working group call/document review. |
| 03/21/03 | 8.00 | | 8.00 | Working group calls regarding DIP. Review documents. |
| 03/24/03 | 6.00 | | 6.00 | DIP document review. Conference calls. |
| 03/25/03 | | 4.00 | 4.00 | Held multiple working group calls/document review. |
| 03/26/03 | | 8.00 | 8.00 | Travel to D.C. at Weil general review |
| 03/27/03 | | 8.00 | 8.00 | Held multiple working group calls/document review. |
| 03/28/03 | | 8.00 | 8.00 | DCHC document review. |
| 03/29/03 | | 8.00 | 8.00 | NY Weil document review. |
| 03/30/03 | | 6.00 | 6.00 | NY Weil document review. |
| 03/31/03 | 2.00 | | 2.00 | Chicago calls/meetings regarding DIP. |
| **Total** | **72.00** | **80.00** | **152.00** | |
| **Brian Singer, Vice President** | | | | |
| 03/03/03 | | 0.75 | 0.75 | Conference call with NCFE discussing current GSE JCAHO situation, upcoming court dates and latest on DIP |
| 03/04/03 | 0.75 | | 0.75 | Conference call with NCFE discussing DIP |
| 03/07/03 | | 1.00 | 1.00 | Conference call with group: Updating the forecast, Different scenarios needed, strategy to work with DIP to change covenants |
| 03/12/03 | 1.00 | | 1.00 | Work on Status update presentation |
| 03/13/03 | 3.00 | | 3.00 | Work on Status update presentation |
| 03/14/03 | 2.00 | | 2.00 | Work on Status update presentation. |
| 03/17/03 | 0.50 | | 0.50 | Conference call with group to next steps with respect to JCAHO, DIP, NCFE and Creditors committee requests. |
| 03/17/03 | 0.50 | | 0.50 | Call with GE, Huron, and DCHC to discuss DIP terms, covenants, fees and possibility of signing on 3/19. |
| 03/19/03 | 6.00 | 2.00 | 8.00 | Travel to Weil office in D.C. for meetings with creditors(both secured & unsecured) to discuss JCAHO situation at GSE. Bankruptcy court hearing re: exclusivity and Cain Brothers retention. |
| 03/21/03 | 1.00 | | 1.00 | Conference call update with Huron, DCHC, Weil to discuss all open items including: KERP, JCAHO, NCFE and Committee review of documents, update on DIP. |
| 03/24/03 | 0.50 | | 0.50 | Conference call with GE, Huron on DIP update. |

## DOCTORS COMMUNITY HEALTHCARE CORPORATION
### Billable Hours Time Sheets by Professional
### March 1, 2003 Through March 31, 2003

| Date | DIP Related | General Advisory | Total Time[1] | Description |
|---|---|---|---|---|
| 03/25/03 | 8.00 | 2.00 | 10.00 | DIP - Conference calls with NCFE, Creditor's committee, working group. Develop process for rebidding of DIPs, time schedule, respond to NCFE info requests. |
| 03/26/03 | 5.00 | 1.00 | 6.00 | Review new DIP proposal. NCFE Information requests. |
| 03/27/03 | 2.00 | | 2.00 | DCHC DIP |
| 03/28/03 | 1.50 | | 1.50 | DCHC DIP |
| 03/29/03 | 2.00 | | 2.00 | Work on DIP and Credit Agreement |
| 03/31/03 | 1.00 | | 1.00 | Review latest version of DIP commitment letter |
| **Total** | **34.75** | **6.75** | **41.50** | |

### Todd Rudsenske, Vice President

| Date | DIP Related | General Advisory | Total Time | Description |
|---|---|---|---|---|
| 03/11/03 | 1.00 | | 1.00 | DCHC Meeting for GE, NCFE |
| 03/12/03 | 0.50 | | 0.50 | Status Update call re: DIP with Huron |
| 03/13/03 | 0.50 | | 0.50 | Status Update call re: DIP with Huron |
| 03/13/03 | 2.00 | | 2.00 | Meeting with Huron and Weil Gotchal regarding Status Update presentation |
| 03/14/03 | 6.00 | | 6.00 | Meetings in Washington D.C. with GE Cap, Creditors, NCFE |
| 03/17/03 | 1.00 | | 1.00 | Call update with Weil and DCHC management |
| 03/17/03 | 0.50 | | 0.50 | DIP Call |
| 03/18/03 | 3.00 | | 3.00 | DCHC call with Creditors/document review/calls. Respond to Creditor's Committee calls re: Cain Brother's Engagement letter |
| 03/21/03 | 1.00 | | 1.00 | Conference call update with Huron, DCHC, Weil to discuss all open items including: KERP, JCAHO, NCFE and Committee review of documents, update on DIP. |
| 03/25/03 | 10.00 | | 10.00 | DIP - Conference calls with NCFE, Creditor's committee, working group. Develop process for rebidding of DIPs, time schedule, respond to NCFE info requests. |
| 03/27/03 | 2.00 | | 2.00 | Work on DIP. |
| **Total** | **27.50** | **0.00** | **27.50** | |

[1] Schedule represents billable hours related to general advisory and work related to the DIP financing. This schedule does not reflect time spent on the Sales Process for which Cain Brothers is paid a monthly retainer and Sales Success Fee.

EXHIBIT "C"

**DOCTORS COMMUNITY HEALTHCARE CORPORATION**
**DETAILED LIST OF ACTUAL & NECESSARY DISBURSEMENTS**
**November 20, 2002 Through February 28, 2003**

### Airfare

| Date Billed | Banker | Details | Cost |
|---|---|---|---|
| 11/26/02 | T. Barry | Delta | $  346.50 |
| 11/27/02 | T. Barry | US Airways from LGA to DCA | 260.50 |
| 11/27/03 | J. Harris | Southwest | 207.00 |
| 12/03/02 | B. Singer | Delta to PHX | 417.50 |
| 12/03/02 | B. Singer | Continental from PHX to New York | 399.00 |
| 12/03/02 | B. Singer | Travel Agency Fee | 45.00 |
| 12/04/02 | T. Barry | America West from LGA to PHX | 417.50 |
| 12/04/02 | T. Barry | Continental from PHX to LGA | 399.00 |
| 12/04/02 | T. Barry | Travel Agency Fee | 45.00 |
| 12/04/02 | C. Beith | American | 388.00 |
| 12/10/02 | T. Barry | American from LGA to DCA | 118.50 |
| 12/19/02 | T. Barry | Continental | 375.00 |
| 12/19/02 | T. Barry | Travel Agency Fee | 45.00 |
| 12/26/03 | T. Barry | Continental | 463.00 |
| 12/26/02 | T. Barry | America West | 397.50 |
| 12/26/02 | T. Barry | America West | 397.50 |
| 12/26/03 | T. Barry | Travel Agency Fee | 45.00 |
| 01/06/03 | T. Barry | US Airways from LGA to DCA | 296.50 |
| 01/06/03 | T. Barry | Travel Agency Fee | 45.00 |
| 01/07/03 | B. Singer | US Airways from LGA to DCA | 296.50 |
| 01/07/03 | B. Singer | Travel Agency Fee | 45.00 |
| 01/15/03 | T. Barry | American from LGA to DCA | 118.50 |
| 01/15/03 | T. Barry | America West from IAD (Dulles) to PHX | 511.00 |
| 01/15/03 | T. Barry | Travel Agency Fee | 45.00 |
| 01/15/03 | T. Barry | America West Fees | 150.00 |
| 01/16/03 | T. Barry | America West Fees | 50.00 |
| 01/16/03 | T. Barry | America West from PHX to LAX | 98.00 |
| 01/17/03 | T. Barry | American from LAX to JFK | 870.50 |
| 01/17/03 | T. Barry | Travel Agency Fee | 100.00 |
| 01/27/03 | B. Singer | Delta to DCA | 576.50 |
| 01/27/03 | C. McDonugh | US Airways from LGA to DCA | 296.50 |
| 01/27/03 | B. Singer | Travel Agency Fee (C.McDonugh & B.Singer) | 90.00 |
| 01/27/03 | C. McDonugh | US Airways from LGA to DCA | 296.50 |
| 01/27/03 | B. Singer | Travel Agency Fee | 45.00 |
| 01/31/03 | T. Barry | American from LGA to BOS | 118.50 |
| 02/03/03 | T. Barry | Delta from JFK to LAX | 1,221.50 |
| 02/03/03 | T. Barry | Travel Agency Fee | 45.00 |
| 02/04/03 | T. Barry | America West from LAX to PHX | 96.50 |
| 2/5-6/03 | T. Barry | American from OHX to ORD (O'Hare) ORD to LGA | 548.00 |
| 02/06/03 | T. Barry | American Change Fee | 100.00 |
| 2/10-11/03 | T. Barry | American from EWR to ORD - ORD to LGA | 609.75 |
| 02/10/03 | T. Barry | Travel Agency Fee | 45.00 |
| | | | **$  11,481.25** |

EXHIBIT "C"

| Ground Transportation | | | |
|---|---|---|---|
| Date Billed | Banker | Details | Cost |
| 11/26/02 | T.Barry | Taxi to Airport | $        22.00 |
| 11/26/02 | T.Barry | Taxi to Courthouse | 17.00 |
| 11/26/02 | T.Barry | Taxi to Airport | 16.00 |
| 12/03/02 | E. Fishman | Amtrak | 26.00 |
| 12/03/02 | J. Harris | Hertz Car Rental | 61.61 |
| 12/10/02 | B.Singer | Car Service | 22.00 |
| 12/11/02 | T.Barry | Taxi to Hotel | 18.00 |
| 12/11/02 | T.Barry | Taxi to Courthouse | 12.00 |
| 12/12/02 | T.Barry | Taxi to Hotel | 12.00 |
| 12/12/02 | T.Barry | Taxi to Restaurant | 9.00 |
| 12/12/02 | T.Barry | Taxi to Hotel | 9.00 |
| 12/12/02 | T.Barry | Taxi to Airport | 19.00 |
| 12/17/02 | J. Harris | Car Service | 18.00 |
| 12/17/02 | T.Barry | Car Service | 92.31 |
| 12/17/02 | J. Harris | Car Mileage | 15.00 |
| 12/19/02 | T.Barry | Taxi to Reese Hospital | 24.00 |
| 12/19/02 | T.Barry | Taxi to office | 11.00 |
| 12/19/02 | T.Barry | Taxi to Restaurant | 7.00 |
| 12/19/02 | T.Barry | Taxi to Hotel | 6.00 |
| 12/19/02 | T.Barry | Taxi to office | 5.00 |
| 12/20/02 | T.Barry | Taxi to Restaurant | 5.00 |
| 12/20/02 | T.Barry | Taxi to Aiport | 26.00 |
| 12/26/03 | T.Barry | Hertz Car Rental | 135.86 |
| 12/30/02 | T.Barry | Car Service | 84.15 |
| 12/30/02 | T.Barry | Car Service | 225.52 |
| 12/30/02 | B.Singer | Car Service | 61.71 |
| 12/30/02 | C. Beith | Car Service | 13.00 |
| 12/30/02 | C. Beith | Car Service | 12.00 |
| 12/30/02 | C. Beith | Car Service | 30.00 |
| 12/30/02 | E. Fishman | Car Service | 2.50 |
| 12/30/02 | E. Fishman | Car Service | 15.00 |
| 01/06/03 | T.Barry | Taxi to Hotel from Airport | 19.00 |
| 01/06/03 | T.Barry | Taxi to Restaurant | 6.50 |
| 01/07/03 | T.Barry | Taxi to Hotel > Office | 14.50 |
| 01/07/03 | T.Barry | Taxi to office | 6.00 |
| 01/07/03 | B.Singer | Car Service | 15.00 |
| 01/07/03 | B.Singer | Car Service | 10.00 |
| 01/14/03 | B.Singer | Car Service | 8.00 |
| 01/14/03 | B.Singer | Car Service | 130.05 |
| 01/14/03 | T.Barry | Car Service | 120.26 |
| 01/14/03 | T.Barry | Car Service | 41.31 |
| 01/14/03 | T.Barry | Car Service | 154.43 |
| 01/14/03 | T.Barry | Car Service | 50.49 |
| 01/14/03 | T.Barry | Car Service | 114.75 |
| 01/15/03 | T.Barry | Taxi to DC Office | 18.00 |
| 01/15/03 | T.Barry | Taxi to DC Airport | 16.00 |
| 01/15/03 | T.Barry | Taxi to Courthouse | 11.00 |
| 01/16/03 | T.Barry | Taxi to DCHC Office | 30.00 |
| 01/16/03 | T.Barry | Taxi to Aiport | 25.00 |
| 01/16/03 | T.Barry | Taxi to Hotel | 5.00 |
| 01/17/03 | T.Barry | Dynasty Limo to meet w/S.Nash>Foothill>Airport | 240.00 |
| 01/29/03 | B.Singer | Phoenix car service to Airport | 122.45 |

| 01/29/03 | B.Singer | Phoenix car service from airport to home | 117.20 |
|---|---|---|---|
| 02/01/03 | B.Singer | Car Service | 18.00 |
| 02/01/03 | B.Singer | Car Service | 18.00 |
| 02/01/03 | T.Barry | Car Service | 161.67 |
| 02/01/03 | T.Barry | Car Service | 73.95 |
| 02/01/03 | T.Barry | Car Service | 119.85 |
| 02/03/03 | T.Barry | Avis Car Rental | 132.31 |
| 02/03/03 | T.Barry | Taxi to Hotel in LA | 2.00 |
| 02/03/03 | T.Barry | Taxi to Meeting in LA | 38.00 |
| 02/03/03 | T.Barry | Taxi to Airport in LA | 40.00 |
| 02/06/03 | T.Barry | Taxi to Restaurant | 7.00 |
| 02/06/03 | T.Barry | Taxi to Hotel | 7.00 |
| 02/06/03 | T.Barry | Taxi to Hotel | 45.00 |
| 02/06/03 | T.Barry | Taxi to Airport | 45.00 |
| 02/11/03 | T.Barry | Taxi to Hospital in Chicago | 46.00 |
| 02/11/03 | T.Barry | Taxi to Hotel | 12.00 |
| 02/11/03 | T.Barry | Taxi to Restaurant | 8.50 |
| 02/11/03 | T.Barry | Taxi to Hotel | 9.00 |
| 02/12/03 | T.Barry | Taxi to Airport | 46.00 |
| | | | $ 3,136.88 |

### Hotel & Lodging

| Date Billed | Banker | Details | Cost |
|---|---|---|---|
| 12/04/02 | T. Barry | Marriott | $ 306.32 |
| 12/06/02 | T. Barry | Camelback Inn - Phoenix, AZ | 670.30 |
| 12/10/02 | B. Singer | Camelback Inn - Phoenix, AZ | 1,033.75 |
| 12/11/02 | T. Barry | St. Regis - Washington | 708.73 |
| 12/20/02 | T. Barry | Renaissance Hotel | 253.79 |
| 12/21/02 | T. Barry | Renaissance Hotel | 5.34 |
| 12/26/02 | T. Barry | Royal Palms | 539.12 |
| 12/30/02 | C. Beith | Courtyard Marriott | 106.90 |
| 01/06/03 | T. Barry | Marriott | 227.86 |
| 01/07/03 | T. Barry | Marriott | 37.02 |
| 01/16/03 | T. Barry | Ritz Carlton | 364.23 |
| 01/17/03 | T. Barry | Hilton | 159.52 |
| 02/03/03 | T. Barry | Hilton | 158.52 |
| 02/04/03 | T. Barry | Royal Palms | 331.90 |
| 02/04/03 | T. Barry | W. Hotel | 421.57 |
| 02/11/03 | T. Barry | Hotel Monaco | 241.95 |
| | | | $ 5,566.82 |

### Business Meals & Entertainment

| Date Billed | Banker | Details | Cost |
|---|---|---|---|
| 11/26/02 | T.Barry | Working Meals | $ 6.00 |
| 11/27/02 | T.Barry | Working Meals | 7.50 |
| 12/04/02 | T.Barry | Working Meals | 7.50 |
| 12/05/02 | T.Barry | El Torito (T.Barry, J.Marrow, B.Singer) | 75.00 |
| 12/10/02 | B. Singer | Working Meals | 18.58 |
| 12/11/02 | T.Barry | Working Meals | 9.00 |
| 12/11/02 | T.Barry | Working Meals | 8.00 |
| 12/13/02 | T.Barry | Salute Restaurant | 61.85 |
| 12/17/02 | J. Harris | Working Meals | 5.74 |
| 12/19/02 | T.Barry | Working Meals | 8.00 |
| 12/20/02 | T.Barry | Working Meals | 6.00 |

EXHIBIT "C"

| Date | Banker | Details | | Cost |
|---|---|---|---|---|
| 12/21/02 | T.Barry | Working Meals | | 7.00 |
| 12/22/02 | T.Barry | Working Meals | | 3.00 |
| 12/26/02 | T.Barry | Working Meals | | 20.00 |
| 01/06/03 | T.Barry | DC Coast Restaurant | | 164.64 |
| 01/07/03 | B. Singer | Working Meals | | 7.00 |
| 01/15/03 | T.Barry | Working Meals | | 8.00 |
| 01/16/03 | T.Barry | T. Cook's Restaurant | | 73.64 |
| 01/24/03 | T.Barry | CPS New York | | 77.79 |
| 01/28/03 | B. Singer | Working Meals | | 20.12 |
| 02/03/03 | T.Barry | Working Meals | | 3.00 |
| 02/03/03 | T.Barry | Working Meals | | 80.22 |
| 02/04/03 | T.Barry | Working Meals | | 15.00 |
| 02/04/03 | T.Barry | Working Meals | | 7.00 |
| 02/05/03 | T.Barry | Working Meals | | 6.00 |
| 02/05/03 | T.Barry | Working Meals | | 8.00 |
| 02/11/03 | T.Barry | Working Meals | | 8.00 |
| 02/12/03 | T.Barry | Working Meals | | 7.00 |
| 02/12/03 | T.Barry | Working Meals | | 2.00 |
| | | | $ | 730.58 |

### Printing/Photocopy

| Date Billed | Banker | Details | | Cost |
|---|---|---|---|---|
| 11/30/02 | T. Barry | Database Service | $ | 19.50 |
| 12/13/02 | C. Beith | Kinkos | | 9.22 |
| 12/15/02 | B. Singer | Internal | | 35.33 |
| 12/30/02 | C.McDonough | Internal | | 51.00 |
| 01/14/03 | B. Singer | Internal | | 23.20 |
| 02/25/03 | C.McDonough | Internal | | 33.00 |
| | | | $ | 171.25 |

### Conference Calls/Telephone

| Date Billed | Banker | Details | | Cost |
|---|---|---|---|---|
| 12/10/02 | T. Barry | Telephone/Cellular | $ | 59.95 |
| 12/31/02 | B. Singer | Conference Calls/Fax | | 39.36 |
| 12/31/02 | T. Barry | Conference Calls/Fax | | 333.60 |
| 12/31/02 | T. Barry | Conference Calls/Fax | | 47.28 |
| 12/31/02 | T. Barry | Conference Calls/Fax | | 27.60 |
| 12/31/02 | T. Barry | Conference Calls/Fax | | 5.04 |
| 12/31/02 | T. Barry | Conference Calls/Fax | | 64.08 |
| 01/14/03 | T. Barry | Conference Calls/Fax | | 10.80 |
| 01/14/03 | T. Barry | Conference Calls/Fax | | 61.20 |
| 01/14/03 | T. Barry | Conference Calls/Fax | | 56.88 |
| 01/14/03 | T. Barry | Conference Calls/Fax | | 20.40 |
| 01/14/03 | T. Barry | Conference Calls/Fax | | 22.32 |
| 02/19/03 | T. Barry | Conference Calls/Fax | | 77.52 |
| 02/19/03 | T. Barry | Telephone/Cellular | | 237.26 |
| 02/19/03 | T. Barry | Telephone/Cellular | | 59.95 |
| 02/19/03 | B. Singer | Conference Calls/Fax | | 37.20 |
| 02/19/03 | B. Singer | Conference Calls/Fax | | 41.40 |
| 02/19/03 | T. Barry | Conference Calls/Fax | | 43.20 |
| 02/19/03 | T. Barry | Conference Calls/Fax | | 108.96 |
| 02/19/03 | T. Barry | Conference Calls/Fax | | 50.16 |
| 02/19/03 | T. Barry | Conference Calls/Fax | | 43.68 |
| 02/19/03 | T. Barry | Conference Calls/Fax | | 23.52 |



EXHIBIT "C"

| Date | Banker | Details | | Cost |
|---|---|---|---|---|
| 02/20/03 | B. Singer | Conference Calls/Fax | | 32.16 |
| 02/20/03 | B. Singer | Conference Calls/Fax | | 12.72 |
| 02/20/03 | T. Barry | Conference Calls/Fax | | 27.36 |
| 02/20/03 | T. Barry | Conference Calls/Fax | | 71.52 |
| 02/20/03 | T. Barry | Conference Calls/Fax | | 28.08 |
| 02/20/03 | T. Barry | Conference Calls/Fax | | 43.92 |
| 02/20/03 | T. Barry | Conference Calls/Fax | | 89.76 |
| | | | $ | 1,776.88 |

| Courier/Messenger | | | | |
|---|---|---|---|---|
| *Date Billed* | *Banker* | *Details* | | *Cost* |
| 11/20/02 | T. Barry | Courier/Messenger | $ | 10.00 |
| 12/10/02 | T. Barry | Courier/Messenger | | 21.90 |
| 12/10/03 | T. Barry | Courier/Messenger | | 26.99 |
| 12/10/02 | T. Barry | Courier/Messenger | | 26.99 |
| 12/10/02 | T. Barry | Courier/Messenger | | 23.89 |
| 12/10/02 | T. Barry | Courier/Messenger | | 30.74 |
| 12/10/02 | T. Barry | Courier/Messenger | | 30.74 |
| 12/17/02 | T. Barry | Courier/Messenger | | 32.77 |
| 12/17/02 | T. Barry | Courier/Messenger | | 87.00 |
| 12/17/02 | T. Barry | Earthlink | | 29.98 |
| 12/30/02 | B. Singer | Courier/Messenger | | 13.15 |
| 12/31/02 | B. Singer | Courier/Messenger | | 13.48 |
| 12/31/02 | B. Singer | Courier/Messenger | | 20.11 |
| 12/31/02 | B. Singer | Courier/Messenger | | 30.94 |
| 12/31/02 | B. Singer | Courier/Messenger | | 25.69 |
| 01/14/03 | T. Barry | Courier/Messenger | | 19.92 |
| 01/14/03 | T. Barry | Reference Materials | | 29.97 |
| 02/01/03 | B. Singer | Courier/Messenger | | 23.64 |
| 02/01/03 | T. Barry | Courier/Messenger | | 20.80 |
| | | | $ | 518.70 |

Total Expenses $ 23,382.36

WEIL, GOTSHAL & MANGES LLP
Attorneys for the Debtors
 and the Debtors in Possession
767 Fifth Avenue
New York, New York 10153
(212) 310-8000
Deryck A. Palmer, Esq.
Andrew M. Troop, Esq.

**FILED AND ENTERED**

**MAR 2 0 2003**

Denise H. Curtis, Clerk
U.S. Bankruptcy Court for D.C.

UNITED STATES BANKRUPTCY COURT
DISTRICT OF COLUMBIA

------------------------------------------------------------x
In re                                              :
                                                   :        Case No.
GREATER SOUTHEAST COMMUNITY                        :        02-2250 (SMT)
HOSPITAL CORPORATION I, et al.,                    :        Jointly Administered
                                                   :        (Chapter 11)
                        Debtors.                   :
------------------------------------------------------------x

ORDER AUTHORIZING DEBTORS TO EMPLOY
CAIN BROTHERS AND COMPANY, LLC AS INVESTMENT BANKER
TO THE DEBTORS NUNC PRO TUNC TO NOVEMBER 27, 2002

Upon the application of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), dated December 19, 2002 (the "Application"), for entry of an order under 11 U.S.C. § 327(a) and Fed. R. Bankr. P. 2014 and 2016 authorizing the employment and retention of Cain Brothers and Company, LLC ("Cain Brothers") as investment banker to the Debtors nunc pro tunc to November 27, 2002, on the terms described in its engagement letter (the "Engagement Letter");[1] and upon consideration of the affidavit of Thomas M. Barry (a member of Cain Brothers) dated December 19, 2002 and the supplemental affidavit of Thomas M. Barry dated March 19, 2003 (collectively, the "Affidavits"); and due notice of the Application having been

_____

[1] The Engagement Letter has been amended to address the concerns raised by the Official Committee of Unsecured Creditors appointed in these chapter 11 cases (the "Creditors' Committee"). A copy of the Engagement Letter, as amended, is annexed hereto as Exhibit A.

C:\DOCUMENTS AND SETTINGS\LOISEAU\LOCAL SETTINGS\TEMP\C.DATA.NOTES\-5522845.DOC

provided to (i) the United States Trustee for the District of Columbia, (ii) attorneys for the Creditors' Committee, and (iii) all those parties who have filed a notice of appearance pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure and no other or further notice need be provided; and the Court having reviewed the Application and the Affidavits; and the Court having determined that the relief requested in the Application is in the best interests of the Debtors, their estates, creditors and other parties-in-interest; and it appearing that proper and adequate notice of the Application has been given and that no other or further notice is necessary; and upon the record herein; and after due deliberation thereon; and good and sufficient cause appearing therefore, it is hereby

ORDERED, ADJUDGED AND DECREED THAT:

1.      The Application is granted as modified herein.

2.      Pursuant to 11 U.S.C. § 327(a) and Bankruptcy Rules 2014 and 2016, the Debtors are authorized to employ and retain Cain Brothers as their investment banker, nunc pro tunc to November 27, 2002, pursuant to the terms set forth in the Application and this Order, and to the extent consistent with the Application and this Order, the Engagement Letter.

3.      Cain Brothers' application for compensation shall be subject to the approval of this Court and shall be filed in accordance with the procedures set forth in the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of the United States Bankruptcy Court for the District of Columbia, and any further orders of this Court regarding interim and final compensation in these cases.

4.      The Office of the United States Trustee (the "United States Trustee") and the Creditors' Committee retain all rights to review Cain Brother's interim and final fee applications (including expense reimbursement) on all grounds including section 330 of the Bankruptcy Code.

5.    The Debtors are authorized to indemnify Cain Brothers and its directors, officers, agents and employees pursuant to the indemnification provisions of the Engagement Letter; provided however, that all requests of Cain Brothers for payment of indemnity, contribution or otherwise pursuant to the indemnification provisions of the Engagement Letter shall be made by means of an application and shall be subject to review by the Court to ensure that any such payment conforms to the terms of the Engagement Letter and is reasonable based upon the circumstances of the litigation or settlement in respect of which indemnification or contribution is sought; provided further, in no event shall Cain Brothers be entitled to indemnification or contribution in the case of its own bad faith, self-dealing, gross negligence or willful misconduct.

6.    Notwithstanding any terms in the Engagement Letter to the contrary, Cain Brothers shall not suspend services to the Debtors for past due invoices, and must seek approval of this Court prior to any suspension of services.   Any and all retainers received by Cain Brothers shall be applied to its first request for compensation in these cases.

7.    This Court will retain jurisdiction to construe and enforce the terms of the Application, the Engagement Letter, and this Order.

8.    To the extent there may be any inconsistency between the terms of the Application, the Engagement Letter this Order, the terms of this Order shall govern.

Dated: Washington, D.C.
    March /9, 2003

S. MARTIN TEEL, JR..
UNITED STATES BANKRUPTCY JUDGE

cc:    B. Amon James (Office of the United States Trustee)
    Deryck A. Palmer (Weil, Gotshal & Manges LLP)
    Andrew M. Troop (Weil, Gotshal & Manges LLP)

Peter Isakoff and Holly Loiseau (Weil, Gotshal & Manges LLP)
Sam Alberts (Akin Gump Strauss Hauer & Feld, LLP) for Creditors' Committee
Thomas M. Barry (Cain Brothers & Company, LLC)

Agreed to as to
form and substance:

**The Debtors:**

By their attorneys,

---

Deryck A. Palmer, Esquire
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153

**The Creditors' Committee:**

By its attorneys,

---

Sam J. Alberts, Esquire
Akin Gump Strauss Hauer & Feld LLP
1333 New Hampshire Avenue, NW
Washington, D.C. 20036

**W. Clarkson McDow, Jr.**
**United States Trustee for Region Four:**

By his attorney,

---

B. Amon James, Trial Attorney
Office of the United States Trustee
115 South Union Street, Suite 210
Alexandria, Virginia 22314

COPIES MAILED TO THE ABOVE NAMED
THIS_____DAY OF_____, 20____

---

DEPUTY CLERK

# EXHIBIT A

March 17, 2003

Paul R. Tuft
Chairman and Chief Executive Officer
DOCTORS COMMUNITY HEALTHCARE CORPORATION
6730 North Scottsdale Road, Suite 200
Scottsdale, Arizona 85253

Dear Paul:

Cain Brothers & Company, LLC ("Cain Brothers") appreciates the opportunity to work with Doctors Community Healthcare Corporation and its affiliates (collectively "DCHC") as investment banker on activities related to its recent Chapter 11 filing in the US Bankruptcy Court in the District of Columbia. These services could include any or all of general advisory, valuation analysis, capital raising and representation on sales assignments. This letter outlines the services Cain Brothers will provide during the engagement, our proposed compensation, and other topics related to providing these services.

**Services to Be Provided**

Cain Brothers could provide services to DCHC during this engagement in four different professional areas. These are: general advisory services, valuation analysis, capital raising and sales advisory. Our services in each of the four areas are outlined below.

*General Advisory:*

In this phase of our engagement, Cain Brothers would assist DCHC and its other professional advisors in meeting and negotiating with other parties related to both the DCHC and the NCFE bankruptcy cases. This could include both secured and unsecured creditors or their representatives for both DCHC and NCFE.

*Valuation*

DCHC requested a valuation of each of its hospital operations on or before December 11, 2002. Under separate cover and in conversations over this period, we have provided DCHC's management and professional advisors a comprehensive list of our information needs.



Mr. Paul R. Tuft
Page 2
March 17, 2003

Cain Brothers would develop a separate valuation for each of the DCHC facilities and then combine the separate valuations for each facility to help derive an overall valuation of DCHC. For each facility, our valuation would consider the following:

- Size and services provided at the facility;
- Historic operating and utilization statistics;
- Historic financial performance and profitability;
- Potential for future growth;
- General market overview;
- Geographic location:
- Competitive position;
- Specific legal and regulatory considerations;
- Regulatory environment for the sale of a facility in its market; and
- Potential purchasers

This information will be combined with a comparison of the individual facility to market metrics to determine a range of values for each facility. After this analysis has been completed for each DCHC facility, we will then aggregate the results to help determine an overall value of the facility. Please note the overall value may or may not be equal to the summation of the results of the individual facilities.

*Raise Equity and Debt to Recapitalize the Company*

Cain Brothers would represent DCHC with both equity investors and debt lenders to raise funds to recapitalize the Company. As part of this engagement, Cain Brothers would do the following:

- Prepare a background information memorandum for potential equity investors and debt lenders;
- Develop a confidentiality memorandum for potential investors and lenders;
- Prepare a list of potential investors and lenders;
- Send out the confidentiality memorandum and have investors and lenders sign and return them;
- Release the information memorandum on DCHC;
- Enter into negotiations with investors and lenders;
- Develop terms and conditions for both the equity and debt components for the new capital structure; and
- Move to close the transaction along with the management and other professional advisors of DCHC.

Mr. Paul R. Tuft
Page 3
March 17, 2003

*Sales Advisory for One or More Individual Facilities*

For the purposes of this letter, a sale of one or more of the DCHC facilities could include a transaction that involves a change in control through a sale, a lease, a merger, or an affiliation and will be referred to as the "Sales Transaction." For the purposes of this letter, the term "Buyer" shall refer to an affiliation or merger partner, a lessor or an acquirer.

During this phase, Cain Brothers will perform the following tasks:

- Review various documents and information relating to DCHC's financial performance and position, with a view towards either a financing or sales transaction;
- Meet with DCHC, its professionals, and any other third party to obtain information regarding the DCHC's operations and its organization;
- Develop a protocol on how to proceed with a sales transaction;
- List potential purchasers for each facility and for DCHC as a whole;
- Prepare background material on DCHC to be included in an offering memorandum that would be distributed to potential purchasers;
- Draft and receive approval on the form of a confidentiality agreement to be entered into by each potential purchaser;
- Enter into a confidentiality agreement with each potential purchaser;
- Provide each potential purchaser that executes a confidentiality agreement a due diligence package and any other materials reasonably needed or requested by such potential purchaser;
- Hold meetings and site visits with potential purchasers;
- Direct negotiations with potential purchasers to determine the best terms available;
- Work in concert with DCHC and its other professional advisors to prepare a binding definitive agreement as appropriate to the facts; and
- Work in concert with all parties to close the acquisition transactions.

Mr. Paul R. Tuft
Page 4
March 17, 2003


**Fees and Expenses**

Upon acceptance of this letter, our Engagement will commence.   Our professional fees and reimbursements for this Engagement will be as follows:

*General*

Cain Brothers would charge for its time and expenses.  Professionals would be billed at the following rates:

| *Name* | *Title* | *Billing Rate/Hour* |
|---|---|---|
| Thomas M. Barry | Principal | $550 |
| Edward Fishman | Principal | $500 |
| Carsten Beith | Principal | $500 |
| James Marrow | Principal | $500 |
| Jay Harris | Vice President | $400 |
| Martin Sieckman | Vice President | $350 |
| Brian Singer | Vice President | $350 |
| Todd Rudsenske | Vice President | $350 |
| Jennifer Cross | Associate | $250 |
| Christopher McDonough | Senior Analyst | $200 |

Although I have listed several individuals in this section, it is assumed that Tom Barry will do most if not all the negotiations with DCHC's creditors and their advisors.

*Valuation*

Our fee for preparing a valuation for all five of the facilities will be a total of $200,000.

*Fees for Raising Capital*

Monthly Retainer

Cain Brothers would receive a monthly retainer of $35,000, which would be credited against any fees associated with raising equity and/or debt.

Mr. Paul R. Tuft
Page 5
March 17, 2003

Cain Brothers would charge the following fees for acting as placement agent for equity and debt (except debtor-in-possession ("DIP") financing) on behalf of DCHC:

- Equity: six percent (6%) of all equity raised;
- Debt:
  - o One and one half percent (1.5%) of all senior debt; and
  - o Six percent (6%) of all debt below senior debt.

With respect to DIP Financing:

- o Cain Brothers would charge for its time and expenses at rates as detailed under the *General* section of Fees and Expenses herein.

*The Sale Phase.*

- Monthly Retainer of $35,000 (this retainer is the same retainer as the retainer noted in the Fees for Raising Capital Section)

  - $35,000 each month commencing upon the decision to move forward with a Sales Transaction until the conclusion of the Engagement. All monthly retainers will be netted against the Sale Success Fee.

  - The monthly retainer will be reduced proportionately by 20% ($7,000 per facility) upon the successful sale of each facility.

- Sales Success Fee:

  ➢ For Facilities in which the accounts receivable are sold:
    - For conducting a process and arranging or brokering a transaction that produces a binding, definitive agreement with a Buyer: the greater of $400,000 for each facility that is sold and closed or one and one quarter percent (1.25%) of the total Transaction Value as defined below;

  ➢ For Facilities in which the accounts receivable are not sold:
    - For conducting a process and arranging or brokering a transaction that produces a binding, definitive agreement with a Buyer: the greater of $350,000 for each facility that is sold and closed or one and one quarter percent (1.25%), except with respect to the A/R itself which is measured at 0.75%, of the total Transaction Value as defined below;
    - The Sale Success Fee would be due and payable at Closing.

Mr. Paul R. Tuft
Page 6
March 17, 2003

**Incurred Expenses**

Cain Brothers shall be reimbursed for all reasonable incurred expenses associated directly with the engagement, including fees, if any, for counsel. Cain Brothers will not incur any additional significant incurred expense (other than normal items such as travel, after hours meals while working on the engagement, and normal access fees charged by outside database vendors). Cain Brothers understands that its fees and expenses incurred must be reviewed and approved in accordance with the Bankruptcy Court's rules and procedures.

**Transaction Value**

Transaction Value is defined as: In the event of any sale, lease, or other transfer of the business, value will be determined based upon the terms of the purchase or lease agreement or agreements. For a sale, Transaction Value would include the Purchase Price plus any liabilities that would be assumed by the Purchaser plus any assets that would be retained by DCHC ("Retained Assets"), limited to business assets and excluding accounts receivable, intercompany items, related party items, and Non Business Assets, as further defined below, plus the net present value of any future amounts due from Buyer to Seller specified in a Definitive Agreement. The value of the Retained Assets, or liabilities assumed by the Purchaser, shall be their fair market value. In cases where Cain Brothers is not the primary representative on sales assignments for Retained Assets, any fee payable by the DCHC to Cain Brothers will be reduced by the cost to sell the Retained Assets, subject to a cap equal to the amount of the fee payable to Cain Brothers, as defined in the Sales Success Fee section of this letter, on the specific Retained Asset being sold. In the event of a membership transfer, merger, joint venture or other similar form of affiliation, value would be defined as the book value recorded by the Purchaser on its initial trial balance sheet for the assets acquired in the transaction from DCHC plus the net present value of any future amounts due from Buyer to Seller specified in a Definitive Agreement. In the event of a lease, Transaction Value would be defined as the net present value of amounts due from Buyer to Seller specified in a Definitive Agreement. The discount rate used in determining net present value will be equal to the average of the weighted cost of capital for the eight publicly traded hospital companies (tickers: CYH, HCA, HMA, LPNT, PRV, THC, TRI, UHS) plus 200 basis points as of the date of the Definitive Agreement.

Transaction Value does not include (a) intercompany receivables of DCHC, (b) loans or obligations of insiders of DCHC, (c) Nonbusiness Assets of DCHC, (d) assumed leases, and (e) the value of unsold accounts receivable (although Cain Brothers shall receive a fee of 0.75% for the value of the unsold accounts receivable). Nonbusiness Assets do not include tangible property, including property plant and equipment and real estate, which may or may not be sold in separate transactions.

Mr. Paul R. Tuft
Page 7
March 17, 2003

**Disputes; Consent to Jurisdiction**

The parties hereto consent to the jurisdiction of the United States Bankruptcy Court for the District of Columbia to resolve any controversy or claim arising out of or relating to this Agreement.

**Termination of Engagement**

DCHC may terminate the Engagement with or without cause at any time. "Cause", as used herein, means breach of a material provision hereof. If Cain Brothers is terminated without cause, and the DCHC proceeds with a Sales Transaction transaction within the next 12 months to a party brought into the marketing process prior to such termination, either (1) prior to the confirmation of a chapter 11 plan of reorganization; or (2) pursuant to the express terms of an order of the Bankruptcy Court approving such transaction whether by confirmation of a chapter 11 plan of reorganization or other bankruptcy proceeding, Cain Brothers would be entitled to its Sale Success Fee as previously defined.

If Cain Brothers ceases working on a sale, or is terminated for cause, then the monthly retainer will be terminated and Cain Brothers will not be entitled to any Sales Success Fee.

**Indemnification**

Cain Brothers will exercise its best judgment in rendering the services contemplated by this Agreement. Cain Brothers will not be liable for any error of judgment or mistake of law for any loss suffered by DCHC in connection with matters in which this Agreement relates, provided that nothing herein shall be deemed to protect Cain Brothers against any liability to DCHC for which Cain Brothers would otherwise be subject by reason of willful malfeasance, bad faith or gross negligence on its part in the performance of duties hereunder. Subject to court approval, DCHC will indemnify and hold Cain Brothers and its officers, directors, employees and agents (each and "Indemnified Person") harmless from and against any and all claims, actions or liabilities incurred by any of them in the performance of duties hereunder (including reasonable attorneys fees and expenses in connection with any such controversies) other than as a result of such person's willful malfeasance, bad faith or gross negligence. The indemnity contained herein will remain operative and in full force and effect regardless of any termination of this Agreement. Shall a claim for indemnification be made but is found that such indemnification may not be enforced in such case, then DCHC, on the one hand, and Cain Brothers, on the other hand, shall contribute to the losses, actions, claims, damages, and liabilities to which the Indemnified Person may be subject in accordance with the relative benefits received by DCHC and Cain Brothers in connection with the matters contemplated by the Agreement. It shall be a condition of indemnification that Cain Brothers (a) give DCHC prompt written notice of any such claim or action, (b) permit DCHC to defend against such claim or action by attorneys of its choosing and at its sole expenses, and (c) Cain Brothers cooperate in such defense.

Mr. Paul R. Tuft
Page 8
March 17, 2003

### Confidentiality

Cain Brothers will maintain in confidence all information provided to it and will not disclose any of the information to any person or entity unless such information is in the public domain or unless the DCHC authorizes it to disclose same.

### Binding Effect

This agreement will be binding upon Cain Brothers, and its successor and assigns, the DCHC's bankruptcy estate, and the post-confirmation DCHC, i.e., the reorganized DCHC, only upon approval by the Bankruptcy Court.

### Governing Law

The laws of the United States of America, or where applicable, the District of Columbia, shall govern this agreement.

If this agreement is acceptable to DCHC, please acknowledge so by executing a copy of this letter and returning one original copy to us.

We appreciate this opportunity to provide these services to DCHC. If you have any questions regarding the proposal, please call me in our New York office at (212) 869-5600.

Very truly yours,

Thomas M. Barry
Principal

AGREED, APPROVED, AND ACCEPTED BY:

PAUL R. TUFT
CHAIRMAN AND CHIEF EXECUTIVE OFFICER
DOCTORS COMMUNITY HEALTHCARE CORPORATION

_____

3/19/03
Date

C:\Documents and Settings\loiseau\Local Settings\Temp\c.data.notes\Cain Brothers Engagement Letter Mar 17 2003 final.doc

Mr. Paul R. Tuft
Page 9
March 17, 2003



## CERTIFICATE OF SERVICE

I, Holly E. Loiseau, certify that I caused a true and correct copy of the foregoing First Interim Application of Cain Brothers, Investment Banker to the Debtors-in-Possession, for Allowance of Compensation for Services Rendered and Reimbursement of Expenses Incurred for the Period November 20, 2002 through March 31, 2003 to be served by mail, and, if available, electronic mail on the parties/counsel listed on the attached service list on May 16, 2003.

Holly E. Loiseau

## PAPER SERVICE LIST
### (by first class mail and email)

| Name and Street Address | Email Address, if any |
|---|---|
| Any and all of the Debtors<br>c/o Doctors Community Healthcare Corporation<br>6730 North Scottsdale Road<br>Suite 290<br>Scottsdale, Arizona 85253 | pleadings@doctorscommunity.com |
| Deryck A. Palmer, Esq.<br>Weil, Gotshal & Manges LLP<br>767 Fifth Avenue<br>New York, New York 10153<br>(Counsel for the Debtors) | deryck.palmer@weil.com |
| Andrew M. Troop, Esq.<br>Weil, Gotshal & Manges LLP<br>101 Federal Street<br>Boston, MA 021 10<br>(Counsel for Debtors) | andrew.troop@weil.com |
| Peter D. Isakoff, Esq.<br>Holly E. Loiseau, Esq.<br>Weil, Gotshal & Manges LLP<br>1501 K Street N.W. Suite 100<br>Washington, D.C. 20005<br>(Counsel for the Debtors) | peter.isakoff@weil.com<br><br>holly.loiseau@weil.com |
| B. Amon James, Esq.<br>Office of the United States Trustee<br>115 South Union St., Plaza Level<br>Suite 210<br>Alexandria, Virginia 22314 | B.Amon.James@usdoj.gov |
| Kevyn D. Orr, Esq.<br>Jones Day<br>51 Louisiana Avenue, N.W.<br>Washington, D.C. 20001<br>(Counsel for National Century Financial Enterprises, Inc) | korr@jonesday.com |



Ken Kansa, Esq.                         kkansa@sidlev.com
Bank One Plaza
Sidley, Austin, Brown & Wood LLP
10 South Dearborn Street
Chicago, Illinois 60603
(Counsel for Medline Industries, Inc.)

Guy S. Neal, Esq.                       gneal@sidley.com
Natalie Kuehn, Esq.
Sidley, Austin, Brown & Wood LLP
1501 K Street, N.W. Suite 600           nkuehn@sidley.com
Washington, D.C. 20005
(Counsel for Medline Industries, Inc.)

Michael L. Bernstein, Esq.              michael_bernstein@aporter.com
Charles A. Malloy, Esq.
Arnold & Porter                         charles_malloy@aporter.com
555 Twelfth Street, N.W.
Washington, D.C. 20004
(Counsel for Health Care Reit, Inc.)

David Fisher, Esq.                      David.Fisher@dc.gov
Corporation Counsel, D.C.
441 4th Street, N.W. 6th Floor North
Washington, D.C. 20001
(Counsel for the District of Columbia)

Sam J. Alberts, Esq.                    salberts@akingump.com
Jonathan Gold, Esq.
Akin, Gump, Strauss, Hauer, & Feld      jgold@akingump.com
1333 New Hampshire Avenue, N.W.
Suite 400
Washington, D.C. 20001
(Counsel for the Joint Committee of
Unsecured Creditors)

Michael Goodstein, Esq.                 michael.goodstein@arterhadden
Arter & Hadden
1801 K Street N.W. Suite 3001
Washington, D.C. 20006
(Counsel for Provident)

## ELECTRONIC SERVICE LIST
### (by email only)

Donald A. Workman, Esq.                dworkman@foleylaw.com
Roderick B. Williams, Esq.
Foley & Lardner                        rwilliams@foleylaw.com
Washington Harbour
3000 K Street, N.W., Suite 500
Washington, D.C. 20007-5109

Neil Demchick                          ndemchick@navigantconsulting.com
Navigant Consulting
2 North Charles Street, -
Baltimore, Maryland 21201.

Mitchell B. Weitzman, Esq.             Mweitzman@beankinney.com
Bean, Kinney & Korman, P.C.
2000 North 14th Street Suite 100
Arlington, Virginia 22201

Christy Hoffman, Esq.                  choffman@jamhoff.com
James & Hoffman, P.C.
1101 17th Street, N.W., Suite 510
Washington, D.C. 20036

Kermit A. Rosenberg, Esq.              krosenberg@tighepatton.com
Tighe Patton Armstrong Teasdale, PLLC
1747 Pennsylvania Avenue, N.W.
Suite 300
Washington, DC 20006-4604

Haig Maghakian, Esq.                   hmaghakian@milbank.com
Milbank, Tweed, Hadley & McCloy LLP
601 S. Figueroa Street, 30th Floor
Los Angeles, California 90017

William Douglas White                  wdw@mcarthywhite.com
McCarthy & White, PLLC
8180 Greensboro Drive - Suite 875
McLean, VA 22102



Craig B. Young, Esq.                           cby@cblhlaw.com
C. Todd Marks, Esq.                            ctm@cblhlaw.com
Connolly Bove Lodge & Hutz, LLP
1990 M Street, N.W.
Suite 800
Washington, D.C. 20036

Margarita Ginzburg, Esq.                       mginzburg@kayescholer.com
Lester M. Kirshenbaum, Esq.                    lkirshenbaum@kayescholer.com
Kaye Scholer LLP
425 Park Avenue
New York, NY 10022

Charles R. Bennett, Jr., Esq.                  crb@hanify.com
Hanify & King,
Professional Corporation
One Beacon Street
Boston, MA 02108-3107

Conrad K. Chiu, Esq.                           cchiu@pitneyhardin.com
Pitney, Hardin, Kipp & Szuch LLP
685 Third Avenue
New York, NY 10017-4024

Lori L. Purkey, Esq.                           purkey@millercanfield.com
Miller, Canfield, Paddock and Stone P.L.C.
444 West Michigan Avenue
Kalamazoo, MI 49007

Terry E. Hall, Esq.                            tehall@bakerd.com
Baker & Daniels
300 North Meridian Street Suite 2700
Indianapolis, IN 46204

Steven Scow, Esq.                              sscow@sheppardmullin.com
Sheppard, Mullin, Richter & Hampton LLP
650 Town Center Drive, Fourth Floor
Costa Mesa, CA 92626-1925

Daniel D. Doyle, Esq.                          ddoyle@spencerfane.com
Spencer Fane Britt & Browne LLP
120 South Central Avenue 5th Floor
St. Louis, Missouri 63105

John Cunningham, Esq.                          jcunningham@whitecase.com
White & Case LLP
200 South Biscayne Blvd
Suite 4900
Miami, FL 33131

Rochelle A. Herzog                             rah@beverlyhillslaw.com
Zimmerman, Rosenfeld, Gersh & Leeds LLP
9107 Wilshire Boulevard Suite 300
Beverly Hills, CA 90210-5528

**WEIL, GOTSHAL & MANGES LLP**
**Attorneys for the Debtors**
767 Fifth Avenue
New York, New York 10153
(212) 310-8000
Deryck A. Palmer, Esq.
Andrew M. Troop, Esq.

DENISE H. CURTIS
CLERK
U.S. BANKRUPTCY
COURT FOR D.C.

2003 MAY 16  P 5: 34

RECEIVED

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF COLUMBIA

-----------------------------------------------------------X
                                                           :
In re:                                                     :
                                                           :
GREATER SOUTHEAST COMMUNITY          :   Case No.
HOSPITAL CORPORATION I, <u>et al.</u>,   :   02- 2250 (SMT)
                                                           :   Jointly Administered
                      Debtors.                             :   (Chapter 11)
                                                           :
-----------------------------------------------------------X

*FILED*
*MAY 20 2003*
*U.S. Bankruptcy Court for D.C.*
*Denise H. Curtis, Clerk*

## NOTICE OF HEARING ON FIRST INTERIM APPLICATION OF CAIN BROTHERS, INVESTMENT BANKERS TO THE DEBTORS-IN-POSSESSION, FOR ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES INCURRED FOR THE PERIOD
## <u>NOVEMBER 20, 2002 THROUGH MARCH 31, 2003</u>

NOTICE IS HEREBY GIVEN that on May 16, 2003, Cain Brothers and Company, LLC, filed its first interim application for allowance of compensation for services rendered and reimbursement of expenses incurred for the period November 20, 2002 through March 31, 2003.. The Application is being served on you contemporaneously with this notice.

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Application must be made in writing and be filed and served by 4:00 p.m. (EST) on or before June 13, 2003. Any objection to the Application and the proposed order shall be filed with the Clerk of the United States Bankruptcy Court for the District of Columbia, Room 4400, United States Courthouse, 333 Constitution Avenue N.W., Washington, D.C. 20001, with a copy served upon the undersigned. The objection must contain a complete specification of the factual and legal grounds upon which it is based. You may append affidavits and documents in support of your objection.

PLEASE TAKE FURTHER NOTICE that a hearing has been set on the Application for June 17, 2003 commencing at 10:30 a.m., or as soon thereafter as the parties may be heard, before the Honorable S. Martin Teel, Jr., United States Bankruptcy Judge, Room 24, U.S. Courthouse, 333 Constitution Avenue, N.W., Washington, D.C. 20001.

Any creditor or party in interest with questions about the foregoing may contact the undersigned.

NY2:\1271484\01\R93001!.DOC\41776.0003

Dated: Washington, D.C.
       May 16, 2003

Respectfully Submitted,

_____
Deryck A. Palmer
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
(212) 310-8000

Andrew M. Troop
WEIL, GOTSHAL & MANGES LLP
100 Federal Street
Boston, Massachusetts 02110
(617) 772-8300

Peter D. Isakoff (D.C. Bar No, 358419)
Holly W. Loiseau (D.C. Bar 452442)
WEIL, GOTSHAL & MANGES LLP
1501 K Street, N.W., Suite 100
Washington, D.C. 20005
(202) 682-7000

ATTORNEYS FOR DEBTORS AND
DEBTORS-IN-POSSESSION