**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA**

**FILED**

**MAY 2 8 2003**

Denise H. Curtis, Clerk
U.S. Bankruptcy Court for D.C.

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 11 CASES |
| | ) | No. 02-2248 |
| Greater Southeast Community | ) | No. 02-2249 |
| Hospital, et al. | ) | No. 02-2250 through 02-2253 |
| | ) | |
| | ) | **Hearing Date: May 30, 2003** |
| Debtors. | ) | **Hearing Time: 10:30 a.m.** |

**SEIU'S LIMITED OBJECTION TO THE DEBTORS' MOTION PURSUANT TO
SECTION 105(a) OF THE BANKRUPTCY CODE FOR AUTHORIZATION TO PAY
PREPETITION AMOUNTS OWED TO DEBTORS' CRITICAL PHYSICIANS AND
CERTAIN CURRENT EMPLOYEES**

The Service Employees International Union ("SEIU") hereby submits this Limited

Objection to the Debtors' Motion pursuant to Section 105(a) for Authorization to Pay Pre-petition

Amounts Owed to Debtors' Critical Physicians and Certain Current Employees, and in support,

states as follows:

**I.    Background**

1.    November 20, 2002 (the "Petition Date") the Debtors filed a voluntary petition under

Chapter 11 of the Bankruptcy Code. Since the Petition Date, the Debtors have operated their

business and managed their assets as debtors-in-possession. The cases have been consolidated

for administrative purposes only.

2.    SEIU affiliated local unions represent employees at Greater Southeast Community

Hospital and at two of its debtor affiliates in the above captioned cases, Michael Reese Medical

Center ("Michael Reese") and Pacifica of the Valley ("Pacifica"). On November 25, 2002, SEIU

was appointed to the Joint Committee of Unsecured Creditors (the "Creditors' Committee").

## II.   Motion

3.   By Motion dated May 8, 2003, the Debtors requested that the Court authorize payment of pre-petition sums owed to certain physicians in compensation for providing services to patients at the Debtor hospitals.  Specifically, the Debtors seeks authority to pay $1.2 million in pre-petition claims to certain physicians, certain ordinary course expenses and relocation expenses, claiming that such payment is necessary to "preserve the continuity of their business operations, maintain morale and loyalty and enhance the success of their restructuring efforts." (Motion at 7) .

4.   SEIU objects to the Debtors' Motion on grounds that it disregards the priorities established  by the Code, and does not take into account the amounts owed to all of its employees, including the lower paid service workers and the nurses which are in short supply. As set forth more fully below, the Debtors have not been making post-petition payments into the employees' 401(k) Plan as required by the collective bargaining agreements, nor has the employer allowed the employees to cash out accrued benefits as provided by their collective bargaining agreements.

## III. Collective bargaining agreement

5.   SEIU affiliates represent employees at three of the Debtors' Hospitals.  SEIU 1199E-DC represents approximately 600 service employees at Greater Southeast Community Hospital.  Its collective bargaining agreement (relevant provisions attached hereto as Exhibit 1) became effective on March 1, 2001 and expires on February 9, 2004.   SEIU Local 73HC represents service, maintenance and clerical employees at Michael Reese hospital. SEIU Local 399 represents service, maintenance and technical employees at Pacifica of the Valley Hospital

("Pacifica") in California. Its collective bargaining agreement (relevant provisions attached hereto as Exhibit 2) became effective on April 1, 2001 and expires on March 31, 2004. SEIU Local 535 represents nurses, also at the Pacifica Hospital. Relevant sections of its collective bargaining agreement are attached hereto as Exhibit 3. (SEIU Local 121RN has signed a servicing agreement with Local 535, through which it has agreed to be the agent for Local 535 in collective bargaining and  representational obligations.)

6.   At  Greater Southeast, the collective bargaining agreement between the union and employer require the employer to match employee contributions into the 401(k) plan.  In Article 24 of the collective bargaining agreement with SEIU Local 1199 EDC the employer commits to maintain a 401(k) plan, to allow employees to contribute subject to certain maximums, and that "(T)he Hospital will match employee contributions at the rate of 50% of the first 6% of compensation contributed by the employee to the 401(k) Plan (maximum 3% match)." (Exhibit 1, Article 24, pp 29-30) .

7.   Similarly, in Pacifica's collective bargaining agreement with Local Union 399, it agrees that "(e)ffective April 1, 2001, the Employer shall match all employee contributions to this plan at fifty cents (.50) per one dollar ($1.00), up to an annual Employer maximum contribution of two percent (2%) of the employee's base yearly rate." (Exhibit 2, Article XI, Section 12, p. 13). Its agreement with SEIU Local 535 contains similar language, with a requirement of a matching contribution up to a maximum of two percent (2%) of the employees' base yearly rate. (Exhibit 3, Article XXXIV, p. 27).

8.   SEIU recently learned that in January, 2003, the Debtors ceased making the employer's matching contributions to the 401(k) plan as required by the collective bargaining

agreements on the basis that it could no longer afford these contributions. Local Unions 1199EDC, 121RN and 399 have each filed a grievance under the parties' collective bargaining agreements. These 401(k) contributions are administrative expenses entitled to first priority under Section 507 (a)(1) of the Bankruptcy Code.

**IV. Accrued leave**

9.    Each of the agreements allows employees to cash out accrued leave under certain circumstances. At the Greater Southeast Hospital, employees accrue what is called "Accumulated Leave" (which includes vacations, holidays, personal leave and sick leave time). Employees accrue between 208 and 288 hours per year, depending on seniority and subject to a maximum number of hours ranging from 320 to 480. (Exhibit 1, Article 9, p. 10). So long as a minimum balance is maintained, the employees are entitled to convert eighty hours of leave to cash in each calendar year. (Exhibit 1, Art. 9, Sec. 1(e), p. 11). The Hospital also has the right to convert the leave to cash, if the employee is near the allowable maximum balance and the Hospital is "short-staffed." Id.

10.    At Pacifica, the service and technical employees are given the option of being paid for vacation at the time of vacation or on their anniversary date, and unless the employee specifies otherwise the check is issued on the anniversary date. (Exhibit 2, Article XIII, Section 5, p. 15). Employees are entitled to up to 5 weeks of paid vacation per year, depending on seniority, but are only allowed to carry over two (2) weeks of vacation time from year to year. (Id., pp. 14, 15). The employee is also permitted to convert certain amounts of sick leave to cash on his or her anniversary date. (Exhibit 2, Article XIV, Section 3, p. 16).

11.   The nurses are also allowed up to 5 weeks of vacation depending on seniority. (See Exhibit 3, Article XII, Section 2, p. 12). Accrued leave is automatically paid to employees on their anniversary date. Vacation is not normally allowed to accumulate for more than one (1) year. (Art. XII, Section 4, p. 13). The employer is required to cash out sick leave in excess of thirty days on the employee's anniversary date. In addition, Section 6 of Article XII (Exhibit 3, p. 12) provides that if an employee does not take a holiday within 90 days of his or her anniversary date, the employee "shall" be paid for the unused holiday hours.

12.   Despite these provisions, by virtue of the Court's order on December 11, 2003, employees have not been allowed to cash out paid time off accrued during the pre-petition period. This has resulted in a hardship for many employees, especially nurses, who deferred time off in order to save money, only to be denied the opportunity to retrieve their savings.

13.   As such, the Debtors are in breach of the contracts with the Local Unions. Nevertheless, the Debtors have not taken any steps to reject the collective bargaining agreements under Section 1113 of the Bankruptcy Code and have not indicated a desire to do so. In fact, the employer has attempted to give employees assurances that there will be no changes in employment conditions in order to maintain a stable work force with positive morale. As in *Adventure Resources*, 137 F. 3d 786 (4th Cir. 1998) the Debtors' failure to reject the collective bargaining agreement should be construed as its assumption, in which case pre-petition defaults must be cured and all collective bargaining obligations must be categorized as administrative claims.

14.   Even if the court does not adopt the view that the collective bargaining agreement has been assumed and that obligations arising therefrom are accorded administrative status, the



vacation and sick leave accrued within 90 days of the bankruptcy is accorded third priority status under Section 502(a)(3).

## IV. Basis for Objection

15. SEIU agrees with the Debtors that there are circumstances when it is consistent with the Bankruptcy Code to allow the payment of certain pre-petition claims, such as the payment of wages to the employees in the early stages of the case. It is clearly a high priority of the estate to maintain functioning hospitals, which requires that healthcare professionals and other employees continue to provide services to the Debtors. Nevertheless, SEIU objects to the payments as requested in the current circumstances.

16. Distributions in a Chapter 11 proceeding should be made in accordance with the priority scheme established by Section 507. Although Section 507 priorities are not inflexible, in this case the Debtors propose to pay certain claims for physician services while at the same time they refuse to pay administrative claims for retirement benefits for the lowest paid employees, as well as professionals such as registered nurses. Although payments to all of the employees and physicians may be necessary to permit the greatest likelihood of survival of the debtor, the court should not place a higher priority on the pre-petition claims of physicians than it does the priority claims of other employees.

17. Wherefore, SEIU respectfully requests that (i) the Motion as presently proposed be denied, (ii) any Order granting the Motion require that the Debtors fulfill their obligation to make matching contributions to the 401(k) plan and to make other employee payments which are accorded priority status; and (iii) the Court grant such other and further relief as it deems just and proper.

Respectfully submitted,

Christy L. Hoffman
D.C. Bar 432610
JAMES & HOFFMAN, P.C.
1101 17th Street, N.W., Suite 510
Washington, D.C.  20036
(202) 496-0500 (phone)
(202) 496-0555 (fax)

Counsel for Service Employees International Union

Date: May 28, 2003

1

# COLLECTIVE BARGAINING

# AGREEMENT

## by and between

## GREATER SOUTHEAST
## COMMUNITY HOSPITAL CORPORATION I

## And

## DISTRICT 1199E - DC
## SERVICE EMPLOYEES
## INTERNATIONAL UNION

## MARCH 1, 2001
## to
## FEBRUARY 29, 2004

**EXHIBIT 1**

## PREAMBLE

This collective bargaining agreement (the "Agreement"), effective as of March 1, 2001, is made and entered into by and between the Greater Southeast Community Hospital Corporation I (the "Hospital") and District 1199E-DC Service Employees International Union, AFL-CIO, CLC (the "Union").

The Hospital and the Union recognize that essential services vital to the community, patients, and the interests of its employees depend upon the Hospital's ability to provide high quality and uninterrupted patient care. Accordingly, the parties agree to strive mutually to improve the care and comfort of patients and to resolve the complex challenges of today's work place in a cooperative, orderly, and peaceful manner. With these goals in mind, the parties have entered into this collective Agreement, setting forth their full agreement on wages, rates of pay, hours of work, and other terms and conditions of employment.

## ARTICLE 1

## UNION RECOGNITION AND UNIT

**Section 1.    Collective Bargaining Unit.** The Hospital recognizes the Union as the exclusive collective bargaining representative of the employees of the Hospital as defined in this Article.

**Section 2.    Employee Defined.** Whenever used in this Agreement, the term "employee" shall mean:

(a) All full-time and regular part-time technical employees employed by the Hospital [and primarily assigned to its facility located at 1310 Southern Avenue, S.E., Washington, D.C. 20032 in the positions listed in Appendix A hereto,] but excluding all other employees, professional and nonprofessional employees, skilled maintenance employees, business office clerical employees, confidential employees, physicians, registered nurses, home health employees, and guards, and supervisors as defined in the Act.

(b)    All full-time and regular part-time nonprofessional employees employed by the Hospital and primarily assigned to its facility located at 1310 Southern Avenue, S.E., Washington, D.C. 20032 in the positions listed in Appendix A hereto, but excluding all other employees, professional employees, skilled maintenance employees, technical employees, business office clerical employees, confidential employees, physicians, RN's, home health employees, and guards, and supervisors as defined in the Act.

(c)    The listing of positions in Appendix A neither enhances nor limits the parties' right to argue that newly created positions should be included in or excluded from the bargaining unit.

(d)    Employees who are scheduled to work less than eight (8) hours a week and employees who are not regularly employed – such as casual employees – are not covered by this Agreement.

## ARTICLE 9

## PAID LEAVE PLAN

The Hospital shall provide paid leave time to employees covered by this Agreement pursuant to a paid leave plan that contains both Accumulated Leave (AL) which includes paid leave vacations, holidays, personal leave and sick leave time, and a Disability Reserve (DR), which provides paid leave for specified periods of illness in addition to the leave provided for in AL. This plan does not include other forms of paid leave that are provided for separately in this Agreement.

**Section 1.    Accumulated Leave.**

(a)    Regular full-time employees covered by the Agreement shall receive leave according to the following schedule:[1]

| Years of Employment | Accrual Rate | Hours Earned Annually | Max. Hours of To Be Accrued |
|---|---|---|---|
| 1 - 4 | .1000 | 208 | 320 |
| 5 - 9 | .1193 | 248 | 400 |
| 10 + | .1385 | 288 | 480 |

Regular part-time employees shall receive the same amount of AL, but prorated based upon hours worked.

(b)    AL will be paid at the employee's regular hourly rate, excluding any shift differential rate. Cash conversion and payment of AL upon termination also will be paid in this manner.

(c)    Employees can have no more than the scheduled maximum total accumulation of AL at any time. Once an employee reaches the maximum, further accumulation of hours will occur only when the total accumulation is reduced to a level below the maximum and no payments will be made for leave earned after reaching the maximum accumulation.

(d)    When an employee resigns or voluntarily terminates his or her employment and provides the required written notice in advance, all AL hours shall be paid out during the last pay period worked. If the employee does not work as scheduled during the required notice period, all AL hours shall be forfeited. In addition, all unused AL will be paid out according to the employee's regular work schedule prior to the beginning of an approved leave of absence.

---

[1]    This schedule is based upon 2080 hours as one year of service.

(e)    AL may be converted to cash at the Hospital's option in those cases where an employee is near the allowable AL balance and the Hospital is short-staffed. Employees may also request cash conversion of accrued AL time up to eighty (80) hours per calendar year after completion of the probationary period. When converting AL into cash, full-time employees must maintain a balance of forty (40) hours of AL and part-time employees must maintain a balance of twenty (20) hours.

(f)    AL days must be scheduled and arranged for in advance (with the exception of those due to illness or emergency). "In advance" means with ample time for the supervisor or department head to secure sufficient coverage for all time absent. AL may be taken at any time during the calendar year, subject to the operational and/or staffing needs of the departments. While the Hospital will attempt to meet the convenience of employees in AL scheduling, AL must be scheduled in accordance with departmental policies and procedures.

(g)    When AL is being used for an absence due to illness or DR is used, employees must notify their supervisors in accordance with applicable Departmental policies and practices. Employees returning from five or more days of absence due to illness must provide a physician's certification. A physician's certification may also be required prior to return to duty after an absence of less than five days, if in the Hospital's judgment, it is necessary for the protection of employees (including the employee using AL) or patients.

**Section 2.    Disability Reserve.**

(a)    Regular full-time employees covered by this Agreement shall receive leave according to the following schedule:[2]

| Years of Employment | Accrual Rate | Hours Earned Annually | Max. Hours To Be Accrued |
|---|---|---|---|
| 1 - 4 | .0269 | 56 | 225 |
| 5 - 9 | .0230 | 48 | 465 |
| 10 + | .0192 | 40 | 750 |

Regular part-time employees shall receive the same amount of DR, but prorated based upon hours worked.

(b)    Accrued DR may be used in the following circumstances:

i.    When an employee has been absent from work due to an illness for five consecutive scheduled work days, he or she may begin using DR on the sixth day;

ii.    An employee may use DR for any period of hospitalization (regardless of length);

---

[2]    This schedule is based upon 2080 hours as one year of service.

iii.    An employee may use Dr when absent from work after a surgery for up to three days and additional days with a physician's authorization; and

iv.    After a worker's compensation claim has been approved by the insurance company, an employee may use DR for the lost time not paid for by the insurance company for up to three days of absence.

(3)    DR may not be converted into cash.

# ARTICLE 10

## HOLIDAYS

**Section 1.**    The Hospital recognizes the following eight paid holidays:

| | |
|---|---|
| New Year's Day | January 1st |
| Martin Luther King's Birthday | Third Monday in January |
| Memorial Day | Last Monday in May |
| Independence Day | July 4th |
| Labor Day | First Monday in September |
| Columbus Day | Second Monday in October |
| Thanksgiving Day | Fourth Thursday in November |
| Christmas Day | December 25th |

**Section 2.**    Regular full-time and regular part-time employees covered by this Agreement not scheduled to work on recognized holidays will be compensated in accordance with established Accumulated Leave policies, which is paid after leave has been accrued. At the request of the employee, paid time off for holidays will be deducted from the Accumulated Leave bank and is not in addition to Accumulated Leave.

In those cases where regular full-time and regular part-time employees are required to work on a recognized holiday, they will receive a holiday premium of one and one-half times their rate of pay for all hours worked.

**Section 3.** To be eligible for holiday pay, the employee must have worked the last scheduled shift before the holiday, must report to work on the holiday (if scheduled) and must work the entire first scheduled shift after the holiday. Failure to meet these requirements will result in forfeiture of holiday premium pay (except if a holiday falls during a scheduled paid vacation) or the ability to use AL for the holiday, as applicable.

**Section 4.** Employees who are in a period of unpaid leave are not eligible for holiday pay.

**Section 5.** All employees may be required to work on holidays. Scheduling requests will be handled in accordance with departmental practices and final decisions are made at the discretion of the Supervisor or Department Head.

**Section 6.** If a holiday falls on an employee's regular day off, the employee may be scheduled an alternate day off.

**Section 7.** Other procedures and rules relating to holidays are set forth in the Hospital's Policies and Procedures.

## ARTICLE 11

## PAID LEAVE

**Section 1.    Jury Leave.**

(1)    Definitions:

Jury Leave is authorized absence of an employee from scheduled work to serve on jury duty in response to a summons from a local or federal court.

Jury Leave Pay is compensation at the employee's regular hourly rate for all scheduled hours that an employee would have worked had he/she not been summoned for jury duty.

(2)    Eligibility:

(i)    All employees covered by this Agreement are eligible for jury leave at date of hire up to thirty (30) days in any one calendar year.

(ii)    Jury leave pay will be granted only to regular full-time and regular part-time employees.

(3)    Benefits:

Compensation for jury duty will be paid at the eligible employee's regular hourly rate for all scheduled hours that an employee would have worked had he/she not been summoned for jury

-13-

**Section 1.    Eligibility.**

(1)    To be eligible to select short term disability coverage, an employee must be eligible to participate in the Flexible Benefits Program as outlined in that Article.

(2)    The waiting period to be eligible for short term disability coverage extends from an employee's date of hire to the first day of the next month following his/her completion of sixty (60) days of continuous employment in a benefits eligible position.

(3)    A covered employee may be eligible for this benefit if he/she is on workers' compensation leave.

**Section 2.    Definition.**  For purposes of this Article, disability may include injury, illness, or pregnancy, except that disabilities resulting from injury arising out of or in the course of any employment for which the employee is entitled to benefits under workers' compensation are excluded from this coverage.

**Section 3.    Benefits.**

(1)    Short term disability insurance provides 60% of an employee's weekly pay up to a maximum of $500.00 per week.

(2)    Benefits commence on the 31st consecutive day of disability for a period of up to 8 weeks.

(3)    In cases where it has been certified that a covered employee's illness or injury is terminal, the benefit is payable immediately.

(4)    Benefits may be reduced by any other income from such sources as Social Security Disability, pension benefit and workers' compensation benefits.

(5)    Short term disability insurance benefits cease after 8 weeks or when the employee dies.

**Section 4.    Hospital Policies.**  Other rules and procedures relating to short term disability insurance are set forth in the Hospital's Policies and Procedures Manual.

## ARTICLE 24

## <u>RETIREMENT PLAN</u>

**Section 1.    Outline of the Plan.**  Consistent with applicable law, the Hospital maintains an IRC Section 401(k) Plan (the "401(k) Plan"). The Hospital retains the right to modify the 401(k) Plan in order to remain in compliance with ERISA, IRS and any and all of the Federal, State, and local laws and regulations applying to administration or maintenance of the 401(k) Plan.

**Section 2.    Contributions to 401(k) Plan.**

(1)     For any employee who plans to participate in the 401(k) Plan, the minimum employee contribution is one percent (1%) per pay period. The current maximum contribution, as determined by Internal Revenue Service rules, is limited to:

  1.   $10,500 annually for employee contributions; or
  2.   Fifteen percent (15%) of an employee's gross salary, whichever is less.

(2)     The Hospital will match employee contributions at the rate of 50% of the first 6% of compensation contributed by the employee to the 401(k) Plan (maximum 3% match).

(3)     All full-time, part-time and per diem employees who meet the applicable eligibility requirements may participate in the 401(k) plan.

**Section 3.     Hospital Policies.** Additional procedures and rules relating to the 401(k) Plan are set forth in the Plan document and the Hospital's Policies and Procedures Manual.

## ARTICLE 25

### MISCELLANEOUS PROVISIONS

**Section 1.     Due Notice to Employees.** Hospital notification to an employee shall be deemed due and sufficient for the purposes of this Agreement if the notification is made personally, by written memorandum, or by registered or certified mail or telegram delivered to the employee's last known address as shown on his personnel record maintained by the Hospital. It shall be the responsibility of each employee to keep the Hospital informed of his current address and telephone number. For the purpose of computing any notification period, the day the notice is sent shall not be included.

**Section 2.     Medical Examinations.** In the interest of safeguarding the health of employees and of patients, the Hospital may require employees to take a medical examination at the time they are hired, after an offer of employment has been made, or at other times as this may be advisable.

**Section 3.     Uniforms.** The Hospital will provide uniforms in accordance with Hospital and departmental policies.

**Section 4.     Job Descriptions.** Written job descriptions which have been finalized by the Hospital shall be provided to employees upon request. In cases where no such written job descriptions now exist, they shall be provided to employees upon request as they are developed by the Hospital.

**Section 5.     Employee Assistance Program.** The Hospital is committed to developing an Employee Assistance Program.

2

# AGREEMENT

# BETWEEN

## PACIFICA OF THE VALLEY CORPORATION

## and

## HEALTHCARE EMPLOYEES UNION,

## LOCAL 399, SEIU, AFL-CIO, CLC

**Effective**

**April 1, 2001**

**through**

**March 31, 2004**

**EXHIBIT 2**

## AGREEMENT

THIS AGREEMENT entered into this 1st day of April, 2001 is between the PACIFICA OF THE VALLEY CORPORATION dba PACIFICA HOSPITAL OF THE VALLEY, (hereinafter called the Hospital) and HEALTHCARE EMPLOYEES UNION, LOCAL 399, AFL-CIO, CLC (hereinafter called the Union). It is executed by the Union on behalf of the employees of the Hospital within the classifications or work mentioned in this Agreement. This Agreement is an understanding between the parties for the term that it shall be effective, and represents a compromise of all interests resulting from collective bargaining negotiations. The Hospital and the Union, and each of the officers thereof executing this Agreement, jointly and severally represent that they are duly authorized to execute this Agreement.

## UNION-MANAGEMENT COMMITMENT TO QUALITY CARE

The Union and the Employer mutually recognize the importance of promoting cooperation, understanding and respect among the Union. Management and the employees, recognize the importance of promoting a work environment that provides a high degree of satisfaction for physicians, PACIFICA HOSPITAL employees, and patients. The parties recognize the mutual benefit that may be derived from the delivery of quality medical care in a dignified, efficient and professional manner.

## UNION-MANAGEMENT COMMITTEE

The Employer Management Representatives shall meet with a designated Union Committee quarterly on a regular basis to discuss professional concerns, review of problems and present policies, procedures, operations, and the impact of this Agreement. Not more than two (2) employees shall be released from the shift during which the meeting takes place and shall suffer no loss of pay. The meeting shall last no more than two (2) hours except by mutual consent.

Written agendas of matters to be discussed shall be provided by both parties no later than one (1) week before each scheduled meeting. If parties have no items for the agenda, the meeting shall be deemed canceled. Special meetings, in addition to the meetings provided above, may be requested by either party. Neither party shall refuse to meet, cancel or otherwise delay the Committee from meeting or resolving workplace issues. Both parties agree in the event of an unforseen emergency the Committee Meeting may have to be rescheduled. Both parties agree to reschedule the Committee Meeting within a two (2) week period of time unless mutually agreed to extend that time frame.

1

The Employer will provide adequate security personnel at all times. Security personnel shall patrol the parking lot in an effort to eliminate vandalism and/or theft of employees' vehicles and shall escort employees to and from their vehicles upon request. The Employer shall provide additional security personnel as it determines to be necessary to assure safety during higher risk periods.

## Section 12 - 401(k)

The employer will continue to maintain a voluntary 401 (k) Plan. Any Administrative and other related fees will be the responsibility of the employee. Effective April 1, 2001, the Employer shall match all employee contributions to this plan at fifty cents (.50) per one dollar ($1.00), up to an annual Employer maximum contribution of two percent (2%) of the employee's base yearly rate.

## ARTICLE XII SENIORITY

## Section 1 - Probation

Each new employee shall be on probation for his/her first ninety (90) days of continuous employment and shall be subject to discharge at the Hospital's sole discretion, except for Union activity.

## Section 2 - Definition

Seniority is defined as the employee's length of continuous service with the Hospital from the most recent date of hire regardless of full-time or part-time status and including unpaid leave except that personal leave in excess of thirty (30) days shall not count towards the employee's seniority.

## Section 3 - Layoff

A.    Laid off employees will be recalled to their former classification or a job classification for which they are qualified (if no existing employees from that other classification are on layoff status) in the order of their seniority.

B.    Employees recalled to work after any layoff shall report within one (1) week of the time of issuance of notice to report by registered or certified mail or telegram unless within such period an employee obtains permission form the Hospital to report at a later time. Any employee who fails to report to work in accordance with such notice shall be considered as having voluntarily quit and shall lose all seniority rights unless he/she can establish that he/she was unable to return because of reasons beyond his/her control and that he/she contacted the Hospital at the earliest possible date; provided, further, the employee notified the Hospital of any absence from the geographic area.

In cases of layoffs and recalls, the following factors shall be considered.

1.    Seniority as defined in this Article shall prevail.
2.    Skill and ability to perform the work required in the classification with a minimum

13

of one hundred and sixty (160) hours training.

C.    In the event there is a displacement of employees, the Employer will meet with the Union thirty (30) days prior to said displacement to review employee displacement issues with the intent to establish procedures to minimize such displacement.

## Section 4 - Shift Changes and Transfers

The Hospital shall make a good faith effort to honor requests for shift changes and transfers, provided a vacancy exists and the Hospital has a reasonable opportunity to replace the employee seeking a transfer or shift change; provided, further, the Hospital shall be under no obligation to honor more than one such request per year from each employees.

## Section 5 - Promotions

In cases of promotions, seniority shall prevail, provided skill, and ability are equal.

## Section 6 - Job Posting

All job openings in any classifications defined by this Agreement shall be posted by the Hospital on the Union's bulletin board for at least one (1) week prior to being permanently filled. A copy of the notice shall be mailed to the Union.

## Section 7 - Layoff Notice / Pay

Part-time and full-time employees, as defined in Article IV, shall be given a minimum of one (1) week written notice of layoff due to lack of work and one (1) week pay. Full-time employees with more than three (3) years seniority shall be given a minimum of two (2) weeks written notice of layoff and two (2) weeks pay. The Employer agrees to provide health care coverage for an additional thirty (30) days after layoff.

## ARTICLE XIII - VACATION

## Section 1

All full-time employees covered by this Agreement who have been continuously employed for a period of one (1) year shall be entitled to two (2) weeks vacation with pay; all full-time employees covered by this Agreement who have been continuously employed for a period of five (5) years shall be entitled annually to three (3) weeks vacation with pay; a full-time employees who have been continuously employed for a period of then (10) years shall be entitled annually five (5) weeks vacation with pay.

14

**Section 2**

Part-time employees shall receive vacation benefits in accordance with Article IV, Section 1 (d).

**Section 3**

An employee's vacation request must be submitted to the employee's immediate supervisor in writing. Such requests will be responded to in writing within two (2) weeks. Where two (2) or more employees have requested the same vacation period, seniority applied to classification and department shall prevail. However, there shall be no bumping fir vacation periods which have already been approved. The ultimate right to schedule an employee's vacation period is reserved by the Hospital in order to insure orderly and efficient operations. Subject to the orderly and efficient operation of the Hospital, however, vacations may be taken at any time of the year.

**Section 4**

If a holiday occurs during an employee's vacation period, he/she shall be granted an additional day of vacation with full-time pay or an additional day's pay subject to mutual agreement.

**Section 5**

An employee may request that his/her vacation paycheck be provided at the time he/she goes on vacation as long as the employee gives two (2) weeks notice of such intent. Employees electing to take their vacation pay at the time of their anniversary date shall be provided with their vacation pay at the time they receive their regular paycheck for the pay period in which the anniversary date occurs.

**Section 6**

Upon termination or layoff an employee shall receive payment for all accumulated and unused vacation time.

**Section 7**

An employee shall be permitted to carry over up to two (2) weeks vacation time off from year to year.

**ARTICLE XIV - SICK LEAVE**

**Section 1**

Each regular employee shall accumulate one (1) days sick leave with pay for each calendar month of employment.

15

A.     Twelve (12) hour shift employees shall accumulate eight (8) hours sick leave with pay until he/she has been employed for a period of three (3) months; however, such employees shall be credited with three (3) days of sick leave upon completion of three (3) months of service, but sick leave shall not be retroactive to any absence due to sickness during the first three (3) months of employment.

B.     Regular employees who have completed three (3) months of service shall be paid for the first day of each absence due to illness.

C.     If an employee who has sufficient unused sick leave to his/her credit becomes ill while at work and is unable to complete his/her shift, he/she shall receive sick leave pay for that part of his/her shift which he/she was unable to work.

D.     Accrued sick leave may be used for personal, medical, dental appointment, provided that the employee notifies his/her supervisor at least one week in advance of the appointment, or to compensate for hours scheduled but not worked due to lack of work, or acts of God. Such sick leave must be utilized in increments of one hour.

## Section 2

Sick leave shall be applicable only if the employee is ill on days during which he/she is normally scheduled to work. Pay for sick leave shall be at the rate of pay which the employee would have received had he/she worked his/her regular straight time that day, including shift premium pay. Paid sick leave, except as used for personal, medical or dental appointments, shall be considered as time worked for purposes of computing overtime.

## Section 3

Each employee shall have the option of converting to cash all or any portion of his/her sick leave earned in excess of six (6)days, provided the employee must maintain at least ten (10) days accumulated sick leave. Payment shall be made to the employee by separate check at the time the employee receives his/her regular paycheck for the pay period in which his/her anniversary date occurs. The employee shall provide the Employer with two (2) weeks notice regarding the amount of sick leave he/she wants to convert to cash.

## Section 4

The Hospital may require reasonable proof of physical disability sufficient to justify the employee's absence from work for the period claimed if the employee is out three (3) or more consecutive days. Employees absent for three (3) or more consecutive days may be required to provide a physician's statement prior to returning to work.



An employee who is absent due to illness is required to contact his/her supervisor each day of absence, unless the supervisor is informed of the specific period of absence and date of return in advance.

## Section 5

The payment of sick leave shall not affect or limit an employee's right to the full weekly disability benefits to which he/she may be entitled under the California Unemployment Disability Act. In cases where an employee is eligible to receive his/her full disability benefit payment plus such portion of his/her earned sick leave pay that shall aggregate to an amount equal to but not exceeding the employee's regular rate of pay. In cases of industrial injury entitling an employee to Workers' Compensation Insurance payments, the same method of integration with sick leave shall apply.

In order to provide employees with prompt payment hereunder, the Employer will pay it best estimate of the amount to be made up from the employee's sick leave prior to receiving adjudication from the State as to how much the State will pay. In the event of overpayment by the Hospital, the Hospital is authorized to deduct said overpayment form the employee's paycheck. If the amount to be repaid is more than one-third of the employee's check for the pay period then the deduction will be made over two (2) pay periods. If it is more than two-thirds of the employee's check for the pay period then the deduction will be made over three (3) pay periods.

## Section 6

## Industrial Injury Leave

A.    An employee disabled by an on-the-job injury or illness shall be granted a leave of absence which shall continue until he/she has been released from medical care and declared able to return to work by a physician, or for a maximum of eighteen (18) months.

B.    When an employee returns from such leave, he/she shall be restored to his/her former job classification status and shift, provided he/she notified his/her department head two (2) weeks in advance of the date he/she will be able to report to work.

## Personal Leave

Leaves of absence without pay maybe granted to employees for personal reasons at the discretion of the Hospital, providing such leaves do not interfere with efficient functioning of the organization.

## Miscellaneous Condition to Grant Leaves of Absence

A.    All requests for leaves of absence shall be in writing, and any grant of a leave of absence shall be in writing.

B.     During an unpaid personal leave of absence an employee shall not forfeit any prior accrued benefits under this Agreement. He/she shall continue to accrue vacation, tenure increases, and sick leave benefits for the first thirty (30) calendar days of such a leave, but not thereafter. The Employer shall continue to provide the health and welfare, dental and life insurance benefits provided for under Article XVII of this Agreement for the first thirty (30) calendar days of all other leaves, but not thereafter. Employees shall not receive holidays or funeral leave while on a leave of absence.

C.     When an employee returns to duty, after an authorized leave of absence, he/she shall be reinstated in the same classification in which he/she was employed before his/her absence; but if conditions in the Hospital have so changed that it would be unreasonable to reinstate him/her in a classification as nearly comparable to his/her original classification as is reasonable under the circumstances.

D.     If an employee does not return to work at or before the expiration of an approval leave of absence, such employee shall automatically be terminated. with loss of seniority and benefits. The employee may be rehired at the discretion of the Hospital. A new anniversary date shall be established for the employee. Should the employee become rehired within six (6) months of termination their seniority shall be bridge.

## Bereavement Leave

An employee will be granted up to three (3) days leave with pay at the straight-time hourly rate for time lost from his or her regularly scheduled workweek and an additional two (2) days without pay to attend the funeral, or settle the estate, in the event of a death of the employee's spouse, mother, father, sister, brother, daughter, son, mother-in-law, father-in-law, daughter-in-law, son-in-law, grandparents, grandchildren, legal guardian and legal ward or domestic partner. Reasonable proof of death may be required.

Bereavement leave for twelve (12) hour shift employees shall be paid at twelve (12) hours per scheduled workday to a maximum of twenty-four (24) hours days.

Employees shall be entitled to use up to seven (7) days of their accumulated sick leave to extend bereavement leave time.

## Family Leave

The Employer and the Union shall comply with the Family and Medical Leave Act, the California Family Rights Act, and all other applicable state and federal law pertinent to family and medical leave. Health and Welfare premiums shall continue to be paid by the Employer during the first three (3) months of such leave, or combination of maternity and family leave. The Employee shall retain and accumulate seniority during such period.

18

In order to be eligible for this form of leave, the employee must provide reasonable notice to the employer, and have at least six (6) months of continuous service. Also, an employee is entitled only to a total of three (3) months of such leave in any twelve (12) month period.

## ARTICLE XVI - HOLIDAYS

### Section 1

The following days shall be recognized as holidays: New Year's Day, Washington's Birthday, Memorial Day, Independence Day, Labor Day, Thanksgiving Day, Christmas Day. The employee's anniversary date of hire shall be a holiday.

Effective February 1, 1995, employees shall be entitled to a float holiday.

Effective February 1, 1996, the employee's birthday shall be recognized as a holiday.

### Section 2

A.   Except as provided in Article IV, after the qualifying period of thirty (30) calendar days of continuous service from date of last employment, such employee shall be entitled to holiday benefits, except that, in the case of an employee's birthday, the qualifying period shall be one (1) year of continuous service from the date of last employment instead of thirty (30) days as set forth above. Employees shall be entitled to the float holiday provided for in Section 1 only after completing one (1) years service.

B.   An employee who works on a holiday shall receive, in addition to pay at his/her regular straight-time rate for the hours worked, one of the following at his/her option: (1) eight hours pay at his/her straight-time rate; (2) another day off with pay at a time that is mutually convenient to the employee and the Hospital; or (3) an additional day of paid vacation to be added to the employee's regular vacation.

Holiday pay for twelve (12) hours shift employees shall be paid on the basis of twelve (12) hours per day, whether worked or not.

C.   A part-time eight (8) hour or a part-time twelve (12) hour employee working on a holiday shall receive a full eight (8) or twelve (12) hours pay, in addition to pay at his/her straight-time rate for hours worked. The options provided in paragraph (B) of this section shall apply to part time employees working on a holiday.

### Section 3

In the event a holiday is not granted to an employee within thirty (30) calendar days, he/she shall be paid at the overtime rate of two (2) times the regular rate of pay in addition to his/her rate of pay for

19

the time worked on the holiday.

## Section 4

If an employee's day off falls on a holiday, he/she shall receive another day off with pay.

## Section 5

Pay for the holidays set forth in Section 1 above shall be at the employee's straight time hourly rate including shift differential, where applicable. Holidays shall be considered as time worked in the computation of overtime.

## Section 6

In order to receive holiday pay the employee must work his/her full-time regular shift on both the last scheduled working day immediately preceding the holiday, as scheduled, and on the first scheduled working day following the holiday, unless absence on either of such days is due to one of the following reasons.

A.     The absence is with the express permission of the Hospital;

B.     The absence is due to a bona fide illness, which is certified by a statement from a medical doctor.

## Section 7

An employee who is on layoff shall receive holiday pay if he/she works one (1) day in the pay period preceding the holiday or one (1) day in the pay period following the holiday.

## ARTICLE XVII - HEALTH AND WELFARE, DENTAL, LIFE INSURANCE AND OPTICAL PLANS

### Section 1 - Continued Health Benefits

The Employer shall continue in effect its current HMO medical plan, dental plan, and optical plan or comparable plans as may be offered to other employees of the Hospital. The Employer shall also continue in effect a non-HMO medical plan which shall be subject to such modification and amendment as applicable to all other employees. Upon the request of either party, the Employer and Union shall meet and explore alternative benefit plan options on behalf of the employees. There shall be no changes in coverage or benefit level except as may be agreed upon. In the event of any such modification or amendment, plan members will be given at least thirty (30) days advance notice with opportunity to transfer to another medical plan without restriction or lapse in coverage.

20

3

*Local 121's Copy*



# Agreement

### between

# American Federation of Nurses
## Local 535
## Services Employees International Union, AFL-CIO, CLC

### and

# Pacifica of the Valley Corporation

November 16, 2000

to

November 15, 2003



EXHIBIT 3

## UNION/MANAGEMENT COMMITMENT TO QUALITY CARE

The Union and the Employer recognize the importance of promoting cooperation, understanding and respect among the Union, Management and the employees; and, the additional importance of promoting a work environment that provides a high degree of satisfaction for Physicians, Registered Nurses and patients. The parties recognize the mutual benefit that may be derived from the delivery of quality medical care in a dignified, efficient and professional manner.

## AGREEMENT

The Agreement is entered into this SIXTEENTH day of November, 2000 between PACIFICA OF THE VALLEY CORPORATION (hereinafter referred to as the "Employer") and AMERICAN FEDERATION OF NURSES, Local 535, SERVICES EMPLOYEES INTERNATIONAL UNION, AFL-CIO (hereinafter referred to as the "Union").

### ARTICLE I - RECOGNITION

The Employer recognizes the Union as the sole and exclusive bargaining agent for all Registered Nurses employed at its hospital located at 9449 San Fernando Road, Sun Valley, California, excluding all other employees, office clerical employees, guards and supervisors as defined in the Act, and in accordance with the certification issued by the National Labor Relations Board in Case No. 31-RC 4116.

### ARTICLE II - UNION SECURITY

Section 1.  Union Membership

For employees hired prior to January 1, 1979 membership in the Union shall be completely voluntary; provided, however, that any such employee who becomes a member or has become a member of the Union shall remain a member in good standing for the term of this Agreement as a condition of employment.

Employees who have elected not to join the Union shall, as a condition of employment for the term of this Agreement, pay an amount equal to the Union dues either to the Union as a service fee or to a charity designated by the Union and the Employer.

All current employees hired after January 1, 1979 shall, as a condition of employment for the term of this Agreement, become and remain members of the Union in good standing or pay service fees to the Union equal to Union dues and pay initiation fees.

Employees hired after the effective date of this Agreement, shall as a condition of employment for the term of this Agreement, become and remain members of the Union in good standing or pay service fees to the Union equal to Union dues and initiation fees within thirty (30) days from date of hire.

## Section 6.  Accumulated Holiday Cash-out

Employees who opt to accumulate holidays must utilize the holidays during the anniversary year in which they occur, or within ninety (90) days of the expiration date of the anniversary year.  In the event a holiday(s) is not taken during said time period, the employee shall be paid for the unused holiday hours.

## Section 7.  Seniority

In the event there are more requests for paid-holidays off than can be reasonably granted, the granting of paid-holiday time off shall be determined by seniority as defined in Article IX.  An employee is limited in the exercise of his/her seniority to five (5) holidays per calendar year. An employee is further limited in the exercise of seniority when requesting Christmas and New Years to once every two (2) years.

In all cases when an employee is limited in the exercise of his/her seniority, the next most senior employee(s) request for the paid- holiday off shall be granted.

Holiday bidding shall be open for seniority consideration from February 1 to February 29 of each contract year.

The Union and the Employer continue to request the cooperation of employees to whenever possible informally resolve simultaneous holiday- off requests.

## ARTICLE XIII - VACATIONS

### Section 1.  Vacation Scheduling

Vacations shall, as far as possible, be granted at times most desired by the employees with preference being given to senior employees, as defined in Article IX, but the right to schedule an employee's vacation is reserved by the Hospital in order to ensure orderly and efficient operation. The Employer will use its best efforts to allow employees to utilize all accumulated vacation in one scheduled vacation period.

### Section 2.  Vacation Accumulation

| | |
|---|---|
| Six (6) months service | One (1) week of vacation |
| One (1) year service | One (1) additional week of vacation. |
| Two (2) years service | Two (2) weeks of vacation |
| Three (3) years service | Three (3)) weeks of vacation |
| Seven (7) years service | Four (4) weeks of vacation |
| Ten (10) years service | Five (5) weeks of vacation |

12

Section 3. Payment at Termination

Upon termination, an employee shall receive Payment for all accumulated and unused vacation time.

Section 4. Vacation Carryover

Vacation shall not normally accumulate for more than one (1) year. However, upon mutual written agreement with his/her Director of Nursing, an employee may be allowed to accumulate more vacation time. In order to provide opportunities for rest and relaxation, RNs are required to take a minimum of one (1) week accrued vacation time per year.

Section 5. Part-time Employees

Part-time employees shall accumulate vacation time based on actual hours worked.

Section 6. Pay Prior to Vacation Period

If written request is submitted to the Director of Personnel two (2) weeks prior to the commencement of vacation, the Employer shall pay the employee's accrued vacation pay before the employee leaves for vacation.

Section 7. Seniority

In the event there are more requests for the same or over-lapping vacation periods than can reasonably be granted, the granting of vacation requests will be determined on the basis of seniority as defined in Article IX. For requests involving the granting of vacation periods of one (1) week or longer, an employee is limited in exercising his/her seniority to two (2) times per calendar year. An employee is further limited in the exercise of seniority for vacation requests covering Christmas or New Years to once every two (2) years.

In all cases when an employee is limited in the exercise of his/her seniority, the next most senior employee(s) request will be honored.

Vacation bidding involving the use of one (1) week or more of vacation shall be open for seniority consideration from February 1 to February 29 of each contract year.

The Union and the Employer continue to request the cooperation of Employees to whenever possible informally resolve simultaneous vacation-off requests.

## ARTICLE XIV - HOURS OF WORK, SCHEDULING AND OVERTIME

Section 1. Definition

13

A workday shall consist of eight and one-half (8 1/2) consecutive hours of work, which includes a one-half (1/2) hour unpaid meal period.

## Section 2.  Schedules

Schedules shall be posted one (1) month in advance.  Registered Nurses shall make schedule change requests a minimum of one (1) week in advance of the actual posting date.  Subsequent requests for Schedule changes due to circumstances of which the employee was not aware, shall be granted or denied on the basis of the impact on the orderly operation of the work station (area).  Consideration of such requests shall be on a first-come first-served basis.

The concept of modular scheduling, for all bargaining unit employees, shall be followed for the term of this Agreement.  The Employer reserves the right to make reasonable adjustments to modular schedules.

**When an RN position becomes vacant, the modular shift hours shall be available for bidding to be granted based on seniority.**

## Section 3.  Rest Periods and Meals

Each nurse shall receive a fifteen (15 ) minute rest period for each four (4) hours worked.  Nurses shall receive a one-half (1/2) hour meal period for each eight (8) hours worked.

## Section 4.  Overtime

A.      The overtime pay of one and one-half (1 1/2) times the Nurse's regular rate of pay shall be paid for:

All hours worked in excess of eight (8) hours.

All hours worked in excess of forty (40) hours in a week.

All hours on the sixth (6th) consecutive day of work, except when such schedule results from the employee's request.

B.  The overtime rate of pay of two (2) times the Nurse's regular rate of pay shall be paid for:

All consecutive hours worked in excess of twelve (12) hours.

All hours worked on the seventh (7th) consecutive day of work and each consecutive day there after except when such schedule results from the request of the employee.

All hours worked on consecutive weekends worked when the Employer requires weekend worked.

14

## ARTICLE XVI - SICK LEAVE

### Section 1. Accumulation

Employees shall accumulate sick leave at the rate of one (1) day per month. The Employer may make cash payment for sick leave accumulated in excess of twenty-four (24) days on the employee's anniversary date of hire. The Employer shall make cash payment for sick leave in excess of thirty (30) days on the anniversary date.

Paid sick leave shall not be considered as time worked for the purpose of computing overtime when the Employer requires hours in addition to those normally scheduled.

### Section 2. Integration of Benefits

If an employee is eligible for State Disability Insurance (SDI) benefits the Employer shall reduce paid sick leave by the amount of the SDI benefit the employee is eligible to receive so that combined SDI pay and sick payment total normal straight-time salary. The reduced amount of a sick leave payment shall be charged against the employee's earned sick leave. If an employee is eligible for Worker's Compensation- Insurance payments, the same method of integration with Employer- paid sick leave shall apply. Sick leave pay shall be paid in the appropriate pay period based on the Employer's best estimate of the amount of SDI benefits due the employee.

### Section 3. Part-time Employees

Part-time employees shall accumulate sick leave in direct proportion to hours actually worked on a pro-rata basis based on actual hours during the preceding quarter. One day shall be accumulated for each 173.333 hours worked.

### Section 4. Sick Leave Upon Termination

Upon termination, an employee with more than one (1) year service shall receive cash payment for any accumulated and unused sick leave in excess of six (6) days.

### Section 5. Anniversary Date Sick Leave Cash-out

On the employee's anniversary date of hire, and employee who has been employed by the Hospital for more than one (1) year shall have the option of continuing to accumulate sick leave or being paid in comp- compensation for all accumulated sick leave in excess of six (6) days.

### Section 6. Jury Duty

Nurses required to report for jury services may use accrued sick leave on days they otherwise would have worked to make up the difference between their regular pay and any amount of jury duty pay.

17

1. Registry RNs

2. Bargaining unit RNs scheduled to work an additional shift pursuant to Article XXVI

3. Bargaining unit Per Diem employees.

4. Full-time and part-time bargaining unit RNs. Call-off shall be based on seniority and float area.

No RN who possesses seniority and who is qualified and oriented to perform work on a shift in which a call-off is necessary shall be called-off while a less senior RN is provided work within those areas that an RN is required to float as referenced in Article XXXI - Floating.

## ARTICLE XXXII – SUCCESSORSHIP

The Employer shall inform any prospective buyer of the existence of this Collective Bargaining Agreement; and, that this Agreement, in the event of sale, merger or other transfer of title, shall be binding upon the parties, their successors or assigns and upon any person, party, partnership or corporation that may take over the ownership and/or management of the hospital. The Employer shall be responsible for any damages incurred by failure to fulfill its obligation contained herein.

## ARTICLE XXXIII - HEPATITIS 'B' VACCINE

The Employer agrees to provide, effective immediately, at no cost to the employee, hepatitis 'B' vaccine when and where recommended by the Employee Health Nurse.

## ARTICLE XXXIV - TAX DEFERRED RETIREMENT SAVINGS PLAN

The employer will continue to maintain a voluntary tax deferred retirement savings plan authorized by the Internal Revenue Code (I.R.C).

The employer shall match all employee contributions to this plan at fifty ($.50) cents per one ($1.00) dollar up to an annual maximum Employer contribution of two percent (2%) of the employees' base yearly rate in accordance with the agreement reached November 15, 1989.

## ARTICLE XXXV - PAYCHECKS

All overtime pay, on-call pay and call-back pay shall be shown separately on the paystub. RNs may advise the designated Employer payroll representative concerning her/his desired method of tax treatment for these amounts, subject to available legal options.
Within 90 days of the effective date of this Agreement all vacation and sick leave accumulation shall be shown separately on the pay stub.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on May 28, 2003, a true copy of the foregoing was

served (a) by first-class mail, postage prepaid and by email on those entities and/or parties on the

Paper Service List and (b) by email on the/those entities and/or parties on the Electronic Service

List at their respective email and, as applicable, street addresses, as reflected on the attached

Combined Master Service List.

_____
Christy L. Hoffman



## PAPER SERVICE LIST
(By first class mail and e-mail)

| Name and Street Address | E-Mail Address, If Any |
|---|---|
| Any and all of the Debtors<br>c/o Doctors Community Healthcare<br> Corporation<br>6720 North Scottsdale Road<br>Scottsdale, AZ 85253 | pleadings@doctorscommunity.com |
| Deryck A. Palmer, Esq.<br>Weil, Gotshal & Manges, LLP<br>767 Fifth Avenue<br>New York, NY 10153<br>(Counsel for Debtors) | deryck.palmer@weil.com |
| Andrew M. Troop, Esq.<br>Weil Gosthal & Manges, LLP<br>101 Federal Street<br>Boston, MA 02110<br>(Counsel for Debtors) | andrew.troop@weil.com |
| Peter D. Isakoff, Esq.<br>Holly E. Loiseau, Esq.<br>Weil, Gotshal & Manges, LLP<br>1501 K Street, N.W., Suite 100<br>Washington, D.C.  20005<br>(Counsel for the Debtors) | peter.isakoff@weil.com<br>holly.loiseau@weil.com |
| B. Amon James, Esq.<br>Office of the United States Trustee<br>115 South Union Street, Plaza Level<br>Suite 210<br>Alexandria, VA 22314 | B.Amon.James@usdoj.gov |

1

Kevyn D. Orr, Esq.
Jones Day
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
(Counsel for National Century
Financial Enterprises, Inc.)

korr@jonesday.com


Ken Kansa, Esq.
Bank One Plaza
Sidely, Austin, Brown & Wood, LLP
10 South Dearborn Street
Chicago, IL 60603
(Counsel for Medline Industries, Inc.)

kkansa@sidley.com


Guy S. Neal, Esq.
Natalie Kuehn, Esq.
Sidley, Austin, Brown & Wood, LLP
1501 K Street, N.W., Suite 600
Washington, D.C. 20005
(Counsel for Medline Industries, Inc.)

gneal@sidley.com
nkuehn@sidley.com


Michael L. Bernstein, Esq.
Charles A. Mallow, Esq.
Arnold & Porter
555 Twelfth Street, 7th Floor
Washington, D.C. 20004
(Counsel for Health Care Reit, Inc.)

michael_bernstein@aporter.com
charles_mallow@aporter.com


David Fisher, Esq.
Corporation Counsel, D.C.
441 4th Street, N.W., 6th Floor North
Washington, D.C. 20004

David.Fisher@dc.gov


2

Sam J. Alberts, Esq.
Jonathan Gold, Esq.
Akin, Gump, Strauss, Hauer & Feld
1333 New Hampshire Avenue, N.W.
Suite 400
Washington, D.C.  20036
(Counsel for Joint Committee of
Unsecured Creditors)

salberts@akingump.com
jgold@akingump.com

Michael R. Goodstein, Esq.
Arter & Hadden, LLP
1801 K Street, N.W., Suite 3001
Washington, D.C.  20015
(Counsel for Provident Bank)

michael.goodstein@arterhadden.com

3

## ELECTRONIC SERVICE LIST

Donald A. Workman
Roderick B. Williams
Foley & Lardner
Washington Harbour
3000 K Street, N.W., Suite 500
Washington, D.C.  20007-5109

dworkman@foleylaw.com
rwilliams@foleylaw.com


Neil Demchik
Navigant Consulting
2 North Charles Street
Baltimore, MD 21201

ndemchick@navigantconsulting.com


Mitchell B. Weitzman, Esq.
Bean, Kinney & Korman, P.C.
2000 North 14th Street, Suite 100
Arlington, VA 22201

mweitzman@beankinney.com


Kermit A. Rosenberg, Esq.
Tighe Patton Armstrong Teasdale, PLLC
1747 Pennsylvania Avenue, N.W.
Suite 300
Washington, D.C.  20006-4604

Krosenberg@tighepatton.com


Haig Maghakian, Esq.
Milbank, Tweed, Hadley & McCloy, LLP
601 S. Figueroa Street, 30th Floor
Los Angeles, CA 90017

Hmaghakian@milbank.com


William Douglas White
McCarthy & White, PLLC
8180 Greensboro Drive - Suite 875
McLean, VA 22102

Wdw@mcarthywhite.com


4

Craig B. Young, Esq.                         Cby@cblhlaw.com
C. Todd Marks, Esq.                          Ctm@cblhlaw.com
Connolly Bove Lodge & Hutz, LLP
1990 M Street, N.W., Suite 800
Washington, D.C.  20036


Margarita Ginzburg, Esq.                     Mginzburg@kayescholer.com
Lester M. Kirshenbaum, Esq.                  Lkirshenbaum@kayescholer.com
Kaye Scholer, LLP
425 Park Avenue
New York, NY 10022


Charles R. Bennett, Jr., Esq.                crb@hanify.com
Hanify & King
Professional Corporation
One Beacon Street
Boston, MA 02108-3107


Conrad K. Chiu, Esq.                         cchiu@pitneyhardin.com
Pitney, Hardin, Kipp & Szuch, LLP
685 Third Avenue
New York, NY 10017-4024


Lori L. Purkey, Esq.                         purkey@millercanfield.com
Miller, Canfield, Paddock and Stone, PLC
444 West Michigan Avenue
Kalamazoo, MI 49007


Terry E. Hall, Esq.                          tehall@bakerd.com
Baker & Daniels
300 North Meridian Street, Suite 2700
Indianapolis, IN 46204


Steven Scow, Esq.                            sscow@shepardmullin.com
Sheppard, Mullin, Richter & Hampton, LLP
650 Town Center Drive, Fourth Floor
Costa Mesa, CA 92626-1925


5

Daniel D. Doyle, Esq.                         ddoyle@spencerfane.com
Spencer Fane Britt & Browne, LLP
120 South Central Avenue, 5th Floor
St. Louis, MO 63105


John Cunningham, Esq.                         jcunningham@whitecase.com
White & Case, LLP
200 South Biscayne Boulevard
Suite 4900
Miami, FL 33131


Rochelle A. Herzog, Esq.                      rah@beverlyhillslaw.com
Zimmerman, Rosenfeld, Gersh & Leeds, LLP
9107 Wilshire Boulevard, Suite 300
Beverly Hills, CA 90210-5528