The decision below is hereby signed.  Dated: May 10, 2006.

_S. Martin Teel Jr._ (signature)
S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| GREATER SOUTHEAST COMMUNITY | ) | Case No. 02-02250 |
| HOSPITAL CORPORATION I, *et* | ) | (Jointly Administered) |
| *al.,* | ) | (Chapter 11) |
| | ) | |
| Debtors. | ) | |

DECISION REGARDING CROSS-MOTIONS
FOR SUMMARY JUDGMENT ON PROPOSED STIPULATION
AND ORDER RESOLVING CURE CLAIM OF UNIVERSAL CARE, INC.

On April 6, 2005, the Reorganized Debtors[1] filed a motion

(Docket Entry ("DE") No. 2510) for court approval of a

stipulation resolving the cure claim of Universal Care, Inc.

("Universal Care") incident to the assumption of two contracts.[2]

Sam J. Alberts, Trustee for the DCHC Liquidating Trust, opposes

the motion.  On July 25, 2005, the Reorganized Debtors filed an

---

[1]  This term has the meaning set forth in the plan confirmed
under 11 U.S.C. § 1129 in the debtors' jointly administered
bankruptcy cases.

[2]  Although all of the Reorganized Debtors joined in the
motion, the court will treat the motion as filed by the
Reorganized Debtor Pacifica of the Valley Corporation for ease of
discussion as it is the party that succeeded to the agreements at
issue.

Amended Stipulation (DE No. 2649) modifying the terms of the

stipulation for which they seek approval (the "Stipulation").  In

the Stipluation, it is averred that Reorganized Debtor Pacifica

of the Valley Corporation[3] (which the court may refer to as "the

Reorganized Debtor" as it is the particular Reorganized Debtor

that succeeded to the agreements involved in this dispute) and

Universal Care are parties to a Large Group Subscriber Agreement,

dated October 23, 1997, as renewed from time to time (the "GSA"),

and a certain Capitated Hospital Services Agreement (the

"CHSA"),[4] and that through arms-length negotiations, Universal

_____

[3] On December 3, 1996, Pacifica Hospital of the Valley
Corporation was formed under the laws of the State of Delaware.
See Barbaro Decl. at ¶ 3. It corrected its name to Pacifica of
the Valley Corporation on December 18, 1996. Id.  The record
reflects that Pacifica of the Valley Corporation was doing
business as Pacifica Hospital of the Valley. See January 5, 1998
Letter from Antoine Bryant to Evelyn Norcross, Davis Decl., Exh.
A.  Accordingly, where appropriate, the court will treat
references in the record to Pacifica Hospital of the Valley as
relating to Pacifica of the Valley Corporation d/b/a Pacifica
Hospital of the Valley.  The record also contains several
references to "Pacifica."  The record is clear that such
references are intended to relate to Pacifica of the Valley
Corporation d/b/a Pacifica Hospital of the Valley, and the court
will treat such references accordingly.

[4] The original motion identified this second agreement as a
certain Capitated Medi-Cal Hospital Agreement, dated July 1, 1996
(the "Capitation Agreement").  In his supplemental opposition to
the motion to approve the stipulation, Alberts noted that
Universal Care and the Reorganized Debtor had incorrectly
identified that agreement in their stipulation, and that the
stipulation should be denied accordingly.
     In response, the Reorganized Debtor filed an Amended
Stipulation (DE No. 2649), conceding that the original
stipulation had incorrectly identified the Capitation Agreement
as one of the agreements sought to be assumed, and clarifying

Care and the Reorganized Debtor have agreed to a cure amount that will result in the assumption of those contracts.

The GSA is an agreement pursuant to which Universal Care agreed to provide a healthcare service plan for employees of Pacifica Hospital of the Valley in exchange for premiums set by Universal Care. The remaining issue in this dispute is whether Universal Care's counter-party to the GSA as it existed in 2002 ("the 2002 GSA") was Pacifica of the Valley Corporation (to whose rights, as pertinent here, the Reorganized Debtor has succeeded) or an entity known as Pacific Optima, LLC.

That issue is of significance because Alberts is prosecuting an adversary proceeding, Adv. Pro. No. 04-10266, against Universal Care seeking recovery of an alleged $793,955.11 in preferential transfers made in 2002. If those transfers were made in payment of obligations under the GSA sought to be assumed

---

that the agreement that should have been named is the CHSA.

The CHSA is an agreement under which Universal Care owes or may owe amounts to the Reorganized Debtor, and which Universal Care contends gives rise to a right of setoff against amounts due under the GSA. Alberts disputes that the CHSA gives rise to a right of setoff against amounts paid under the GSA. This, however, is an issue that was raised in <u>Alberts v. Universal Care</u>, Adversary Proceeding No. 10266, and is not a basis upon which Alberts seeks to oppose the motion to approve the stipulation. In these proceedings, the objection raised by Alberts relating to the second agreement sought to be assumed by the Reorganized Debtor was limited to the fact that the stipulation improperly identified the agreement. The Reorganized Debtor having filed an Amended Stipulation correcting the error, the court will treat the limited objection raised by Alberts with respect to the second agreement sought to be assumed as resolved.

here, approval of the Stipulation, and the resulting assumption of the GSA will, consistent with the decision in Alberts v. Humana Health Plan, Inc., 327 B.R. 26 (Bankr. D.D.C., July 11, 2005), terminate the right of Alberts to pursue recovery of the transfers.[5]  Alberts has opposed the granting of approval of the Stipulation to the extent that it would give rise to an assumption of the 2002 GSA (under which the payments were made that he seeks to recover as preferences).

Based on prior oral rulings described below, I determined that if Pacifica of the Valley Corporation was a party to the 2002 GSA, the assumption to be effected pursuant to the Stipulation will effect an assumption of the 2002 GSA.  For the reasons stated in this opinion, I conclude that Pacifica of the Valley Corporation was a party to the 2002 GSA, and I will grant Universal Care and the Reorganized Debtors' motion for summary judgment and approve their proposed Stipulation accordingly.

I

What follows is a summary of the procedural history that shaped the dispute currently before the court.

---

[5]   In Alberts v. Humana, the court addressed how assumption of executory contracts affects the Liquidating Trust's right to pursue avoidance actions.  The court held that the Reorganized Debtors' assumption of executory contracts bars Alberts from pursuing avoidance actions regarding payments made under those executory contracts.

On May 11, 2004, after confirmation of a plan in the
debtors' jointly administered cases, the Reorganized Debtors
served their Notice of Assumption or Rejection of Executory
Contracts and Unexpired Leases, specifically designating
executory contracts and unexpired leases for either assumption or
rejection (DE No. 1717).  Neither the GSA nor the CHSA were
listed in the Notice of Assumption or Rejection, but that was not
fatal to their later assumption as a mechanism existed under the
confirmed plan for later assumption of an executory contract once
the cure amounts required for assumption were resolved to the
satisfaction of the Reorganized Debtors.

On August 11, 2004, Universal Care filed with the Court its
Notice of Cure Claim on Behalf of Universal Care, Inc., asserting
a cure amount of $690,376.23 based upon defaults by the debtor
under the GSA (DE No. 1906).  The Reorganized Debtor disputed
this alleged cure amount, and following negotiations, Universal
Care and the Reorganized Debtor arrived at a stipulation,
initially addressing the GSA and the Capitation Agreement, but
later amended to address the GSA and the CHSA.  As amended, the
Stipulation fixes the amounts due under the GSA and the CHSA,
allowing for setoff of amounts owed to Pacifica of the Valley
Corporation by Universal Care under the GHSA against amounts owed
by the Reorganized Debtor to Universal Care under the GSA, and
provides for the Reorganized Debtor to make specified payments to

5

Universal Care to cure defaults under the GSA.

In support of their right to assume the GSA and CHSA, and
consistent with this court's holding in <u>Alberts v. Humana Health
Plan, Inc.</u>, 327 B.R. 26 (Bankr. D.D.C., July 11, 2005), the
Reorganized Debtors contend that because the GSA and CHSA were
not listed on the notice of assumption or rejection, pursuant to
the Plan, both agreements are deemed assumed as of April 5, 2004,
the effective date of the plan, subject to Universal Care and the
Reorganized Debtor agreeing on the amount and treatment of any
cure amount due with respect to either or both agreements.

On April 15, 2005, Alberts filed a Limited Objection to the
Proposed Stipulation Fixing Cure Amount (DE No. 2521).  Alberts
did not object to the terms of the Stipulation <u>per</u> <u>se</u>; instead,
he objected to the Stipulation to the extent its approval might
preclude his prosecution of the adversary proceeding he commenced
against Universal Care for recovery of an alleged $793,955.11
preferential transfer made by Pacifica of the Valley Corporation
to Universal Care under the GSA (Adv. Pro. No. 04-10266).  To
avoid a potential estoppel defense in the adversary proceeding,
Alberts sought to make any order approving the Stipulation
without prejudice to his right to pursue the avoidance action.

Following discovery, Alberts filed a supplement (DE No.
2640, filed July 14, 2005) to his opposition to further allege
that the first GSA expired by its terms at the end of 1998, that

6

the 2002 GSA that was in existence during the period of the alleged avoidance payments expired by its terms on December 31, 2002, and that Pacifica of the Valley Hospital and Universal Care agreed to a new Large Group Subscriber Agreement every year. Thus, argued Alberts, there was no executory contract in existence that could be assumed pursuant to the April 2, 2004 confirmation of the Plan in the debtors' jointly administered bankruptcy cases.[6]

In his supplemental opposition, Alberts further argued that the GSA could not be assumed because it has been expressly rejected, and that Universal Care cannot obtain the requested relief without the consent of the Trust.[7]

The court held a hearing on July 26, 2005, after which it issued an order directing the parties to treat the Reorganized Debtors' Motion for Court Approval of Stipulation and Order Resolving Cure Claim of Universal Care, Inc., the Liquidating Trust's objection, and Universal Care's reply to the DCHC

---

[6] Alberts does not dispute that if the debtor Pacifica of the Valley Corporation was a party to an executory contract that was in existence on the confirmation date, the Reorganized Debtor succeeded to that executory contract and could assume or reject the executory contract in accordance with the terms of the confirmed plan.

[7] Alberts also argued that the 1996 Capitation Agreement identified in the stipulation is not the contract the Reorganized Debtors actually intend to assume. As explained above, however, the Reorganized Debtor filed an amended stipulation correcting this error, thereby resolving the only objection raised by Alberts that does not relate to the GSA.

Liquidating Trust's objection as cross-motions for summary
judgment (DE No. 2666, entered August 4, 2005).

At an August 31, 2005 hearing on Universal Care and the
Reorganized Debtors' Motion for Summary Judgment, the court found
that the GSA was a continuing contract, as opposed to separate
year-to-year contracts terminating on an annual basis, that the
contract had not been terminated, and that the GSA was thus
susceptible to assumption.  However, the court held that the
Stipulation could not be approved unless the Reorganized Debtor
shows that Pacifica of the Valley Corporation was, in fact, a
party to the 2002 GSA notwithstanding that, until it was amended
in 2003, the written instrument constituting the GSA purports to
be an agreement between Universal Care, Inc. and an entity known
as Pacifica Optima, LLC, not Pacifica of the Valley Corporation.
Because the parties failed to raise this issue prior to the
August 31, 2005 hearing, the court directed Universal Care and
the Reorganized Debtors to submit additional evidence
establishing that Pacfica of the Valley Corporation was a party
to the 2002 GSA.

Pursuant to the court's directive, Universal Care and the
Reorganized Debtors filed a supplemental memorandum explaining
why the debtor Pacifica of the Valley Corporation should be
deemed to have been a party to the 2002 GSA, together with four
supporting affidavits to which several exhibits were attached

8

(the "Supplemental Filing") (DE No. 2720, filed September 30, 2005).  Although Alberts filed an objection to Universal Care and the Reorganized Debtors' supplemental filing, he did not file any countervailing evidence nor did he take further discovery.

The Supplemental Filing and affidavits attached thereto offer two principal bases upon which the Reorganized Debtor and Universal Care contend that the court might find, as a matter of law, that Pacifica of the Valley Corporation was a party to the 2002 GSA notwithstanding that Pacific Optima, LLC was the party originally named as Universal Care's counter-party to the GSA, and remained named as a party to the GSA until the GSA document was amended in 2003 to name Pacifica of the Valley Corporation as Universal Care's counter-party.

First, in an argument later rejected as not warranting granting summary judgment, the Reorganized Debtor asserts that the GSA was transferred to Pacifica of the Valley Corporation in connection with an Asset Purchase Agreement between Pacific Optima Partners and Capital America Healthcare Corporation (now Doctors Community Healthcare Corporation ("DCHC")) (the "APA"). Under that theory, the Reorganized Debtor explains that Pacifica Hospital of the Valley and its related assets were previously owned by Pacific Optima Partners who, in 1997, entered into an Asset Purchase Agreement pursuant to which it sold Pacifica Hospital of the Valley, its related assets, and the assets

9

related to Pacific Optima, LLC, to Capital America Healthcare
Corporation, predecessor by merger to DCHC, one of the
Reorganized Debtors.  Capital America Healthcare Corporation in
turn designated Pacifica of the Valley Corporation to receive the
purchased assets.  The APA lists Universal Care as the hospital's
health care insurance provider.  Accordingly, the GSA, pursuant
to which it is urged that Universal Care was providing healthcare
benefits to hospital employees at the time the APA was executed,
was a contract conveyed to Pacifica of the Valley Corporation
incident to the 1997 sale of the hospital.

    The second theory advanced by Universal Care and the
Reorganized Debtors as to why Pacifica of the Valley Corporation
ought to be deemed a party to the 2002 GSA is that Pacifica of
the Valley Corporation was substituted as a party to the GSA
through a course of conduct.[8]  Specifically, Universal Care and
the Reorganized Debtors have offered evidence demonstrating that,
although Pacific Optima, LLC remained named as a party to the GSA

---

    [8]  At the November 2, 2005 hearing, Alberts complained that
the Reorganized Debtor and Universal Care never briefed the
"course of conduct" issue, and that it was instead raised sua
sponte by the court at the November 2, 2005 hearing.  Although
the Reorganized Debtor and Universal Care may not have used the
phrase "course of conduct" in their Supplemental Filing, that
submission unequivocally advances the argument that Pacifica of
the Valley Corporation should be deemed a party to the GSA
because it has been performing under the GSA and Universal Care
has treated it as the party bound under the GSA.  Whether the
court calls this "performance under the contract" or a "course of
conduct," the analysis is the same.  Alberts' argument is one of
semantics, not substance, and it is rejected accordingly.

until 2003, as early as January 1, 1998, Pacifica of the Valley Corporation expressly assumed the obligations of Pacific Optima, LLC under the contract, has paid the premiums due under the GSA, has accepted rate renewals, and Universal Care has accepted this as performance under the contract.  Thus, it is urged that Pacifica of the Valley Corporation and Universal Care have consistently performed with the mutual understanding that they are the parties bound under the GSA and the fact that the GSA documents were not timely corrected to reflect this reality should not overshadow the fact that the parties intended to be, and were in fact, the true parties to this executory contract.

## II

Except as otherwise noted, the facts relevant to the narrow issue remaining before the court are not the subject of any genuine dispute.

On December 30, 1996, Capital America Healthcare Corporation, predecessor by merger and name change of DCHC, and Pacific Optima Partners, entered into an Asset Purchase Agreement, which closed on January 17, 1997.  At that time, Pacifica Hospital of the Valley and its related assets - including Pacific Optima, LLC - were owned by Pacific Optima Partners.  Pursuant to the APA, Pacific Optima Partners agreed to sell certain of its assets to Capital America Healthcare

Corporation, including Pacifica Hospital of the Valley, and
Pacific Optima Partners' tangible and intangible interests
pertaining to and used in connection with Pacific Optima
Partners' business of owning assets in connection with and
operating Pacific Optima, LLC.  In connection with the closing of
the APA, Capital America Healthcare Corporation identified
Pacifica of the Valley Corporation as its designee to receive the
assets conveyed to it under the APA.

On January 15, 1997, two days prior to the closing of the
APA, Pacific Optima Partners and Pacific Optima Hospital
Management, Inc. assigned 99.9% of their membership interest in
Pacific Optima LLC to Pacifica of the Valley Corporation and .1%
to Paul R. Tuft pursuant to an Assignment and Assumption of
Limited Liability Company Interest.

Universal Care and Pacific Optima, LLC executed a Large
Group Subscriber Agreement dated October 23, 1997 (the earliest
GSA established to have existed pursuant to which Universal Care
agreed to provide healthcare insurance to employees of Pacifica
Hospital of the Valley).  The agreement had an effective date of
January 1, 1998.  For an undetermined period of time prior to
January 1, 1998, Pacific Optima, LLC served as an employee
leasing company for Pacifica of the Valley Corporation (which ran
a hospital), performing such functions as maintaining payroll
accounts through which hospital employees received their

12

paychecks, reporting employee wage information to the Internal

Revenue Service, and serving as the sponsor to the hospital's

employee benefit plans.  As of January 1, 1998, Pacifica of the

Valley Corporation sought to discontinue the use of Pacific

Optima, LLC as a provider of employee benefit services, and

intended to assume responsibility for those functions itself as

an independent employer.[9]  There is no dispute that Pacific

Optima, LLC continues to exist and was never actually dissolved.

Schedule 3.9 of the APA, which pre-dates the October 23,

1997 GSA identifies Universal Care as a provider of health

insurance to Pacifica Hospital of the Valley (the "doing business

as" name of Pacifica of the Valley Corporation).  The parties

dispute whether there existed a GSA that pre-dates the October

23, 1997 GSA or that predates the APA.[10]

Pacifica of the Valley Hospital employee W-2 forms for the

---

[9]  Although Alberts disputes that Pacifica of the Valley
Corporation successfully displaced Pacific Optima, LLC as an
independent employer and he likewise disputes that Pacifica of
the Valley Corporation ultimately became a party to the GSA, this
does not constitute a disputed issue of material fact.  Rather,
it presents an issue of law as to the legal effect attributable
to the conduct of Pacifica of the Valley Corporation, Pacific
Optima, LLC, and Universal Care, which itself is not subject to
any genuine dispute.

[10]  For reasons explained in more detail later in this
opinion, the court concludes that even if a prior iteration of
the GSA existed at the time of the closing of the APA, the GSA
was not transferred to Pacifica of the Valley Corporation
incident to the sale of the hospital.  Accordingly, this does not
constitute a disputed issue of material fact that gives rise to a
triable issue.

1997 tax year identify Pacific Optima, LLC as the employer.  For the 1998 tax year and thereafter, the hospital employee W-2 forms identify Pacifica of the Valley Corporation as the employer.  For the years 1997, 1998, 1999, and 2001, Forms 5500/Annual Return/Report of Employee Benefit Plan filed with the Internal Revenue Service identified Pacific Optima, LLC as the sponsor of the Universal Care plan.  The first Form 5500 to identify Pacifica of the Valley Corporation as the plan sponsor was filed post-petition and was for the tax year 2002.

Pacifica of the Valley Corporation has been directly paying the premiums due under the GSA since no later than January, 2002.  The written documents embodying the GSA were not amended to reflect Pacifica of the Valley Corporation (as opposed to Pacific Optima, LLC) as Universal Care's counter-party until 2003.

Both Pacific Optima, LLC and Pacifica of the Valley Corporation utilized the services of outside brokerage companies to review healthcare plan options available to Pacifica of the Valley Hospital employees.  The brokerage firms they used from approximately 1997 to 2003, were McKenna & Associates, Arthur J. Gallagher & Co. and Keenan HealthCare.  These brokerage firms communicated directly with Universal Care regarding premium rates for each renewal period.

In a letter dated January 8, 1998, Antoine Bryant of McKenna & Associates advised Evelyn Norcross, an Employer Service

Representative at Universal Care, as follows:

> Pacific Optima, LLC is dissolving as a single employer
> organization.  Effective January 1, 1998, Pacifica
> Hospital of the Valley and Serra Medical Clinic will
> exist as independent employers.  Pacifica and Serra
> would like to continue to benefit from the competitive
> rating that their combined size provides, but would
> like to be set up with separate billing, claim
> reporting and separate tax ID's (for 5500 filing
> purposes).

> Please let us know in writing how you can accomplish
> this and also indicate any information needed for
> completing this project.

> Thank you for all of your assistance during this
> process.  Please feel free to contact me . . . if you
> have any questions.

In a letter dated January 5, 1998, Antoine Bryant of McKenna &

Associates notified Evelyn Norcross, Employer Service

Representative at Universal Care, as follows:

> This letter is to confirm Pacifica Hospital of the
> Valley, Maxi-Med and Serra Medical Clinic's acceptance
> of Universal's proposal to renew the Medical HMO and
> POS coverages effective January 1, 1998.

> The following rates will apply . . . .

> It is our understanding there will be no change in
> benefits and the rates are guaranteed for 12 months.

> Thank you for all of your assistance during the renewal
> process.  Please feel free to contact me . . . if you
> have any questions.

In a letter dated June 24, 1998, Kelly R. Shah of McKenna &

Associates advised Evelyn Norcross of Universal Care as follows:

> Effective 1/1/98, Pacifica Hospital of the Valley
> and Serra Medical Clinic became separate employers
> and are no longer under the Pacific Optima
> umbrella.

15

Please note the following changes accompany the
above event:

- Your contract(s) should identify
  Pacifica and Serra as two separate
  employers.
- The EINs for Pacifica and Serra are 95
  4557519 and 95 3959498 respectively.
- Julieta Mayora, Director of Human
  Resources at Pacifica will remain the
  contact for both plans.
- Pacifica and Serra would like to be
  identified as separate employers for
  contract and plan filing purposes, but
  would like to be rated on combined
  experience and combined population.
  Please let us know if this is not
  possible.
- All benefits and provisions should
  remain as they were under the Pacific
  Optima contract.
- Please note that your contract(s) for both
  plans should state eligibility as first of
  the month following 60 days of employment.
  Termination of coverage is at the end of the
  month following termination.

Please call either Karen Frick . . . or me with any
questions.

In a letter dated January 24, 2002, Jennifer Davis, an account

executive with Arthur J. Gallagher & Co., advised Evelyn Norcross

of Universal Care as follows:

This letter is to inform you that Pacifica has
accepted the adjusted renewal rates presented to
them on January 11, 2002 effective retroactively
to January 1, 2002. For confirmation purposes,
the rates are as follows: . . . .
The above rates also reflect restoring the
prescription drug benefits back to a $3 copay for
both generic and brand name drugs. Pacifica will
continue to utilize the Universal Care Network and
will not be changing to the proposed Champion
Network.
Please provide confirmation to me in writing once

16

this adjustment in rating and benefits has been
made.  I look forward to hearing from you.

Finally, in a July 29, 2003 letter, E. Peter McNamara of Keenan

HealthCare advised Mr. Allan Rahn, Vice President of Sales and

Marketing at Universal Care, as follows:

> I am returning the enclosed materials on behalf of
> our mutual client, Pacifica Hospital of the
> Valley.  You will note that the documents are not
> signed.  The correct corporate name is Pacifica of
> the Valley Corporation, DBA Pacifica Hospital of
> the Valley.  Mr. Fatch, the hospital's CEO, has
> indicated he will sign the attached documentation
> once the correction to the corporate name has been
> made.
>
> If you have any questions, feel free to contact
> me....

Universal Care and the Reorganized Debtor Pacifica of the

Valley Corporation agree that it was the mutual intent of both

the debtor and Universal Care to substitute Pacifica of the

Valley Corporation as a party to the GSA after Pacific Optima,

LLC ceased performing employee benefit functions for the

hospital.  The Reorganized Debtor and Universal Care both contend

that they are mutually bound under the GSA, and agree that by no

later than January, 2002, Pacifica of the Valley Corporation was

operating as an independent employer for purposes of serving as

sponsor of the Universal Care healthcare plan.

III

For the reasons described below, the court concludes that
Pacifica of the Valley Corporation was substituted as a party to
the GSA such that the Reorganized Debtor, as successor to the
debtor's rights, has the power to assume that contract.

A.

> Universal Care and the Reorganized Debtor have the
> burden of showing that Pacifica of the Valley
> Corporation was substituted as a party to the GSA by
> way of novation.

Neither the Reorganized Debtor nor Universal Care has filed
a memorandum of law in support of their mutual assertion that
Pacifica of the Valley Corporation is the true party to the GSA
by virtue of Pacifica of the Valley Corporation having been
substituted as a party to the contract.[11]  Instead, they have
filed a supplemental brief with affidavits setting forth the
corporate history of Pacifica of the Valley Corporation and

---

[11]  Both parties appear to concede that California law
governs the interpretation of the GSA. See Reply of Universal
Care Inc. to the Supplemental Opposition to Proposed Stipulation
and Order Resolving Alleged "Cure Claim" of Universal Care, Inc.
and Request for Related Relief (DE No. 2648, filed July 22, 2005)
at 3 (citing to California Civil Code and California case law in
support of argument that the GSA was renewed each year as a
continuous contract); Response to Supplemental Filing of
Universal Care, Inc. and the Reorganized Debtors by the DCHC
Liquidating Trust, at 3 n.6 (DE No. 2730, filed October 21,
2005)(relying on California law to support Trust's interpretation
of the GSA).  The court will thus rely on California law in
disposing of this motion.

detailing the contractual relationship that has existed between Universal Care, Pacifica of the Valley Corporation, and Pacific Optima, LLC.  They contend that, based upon those affidavits, a reasonable finder of fact would have to find that the Reorganized Debtor, as the successor to the rights of Pacifica of the Valley Corporation, is a party to the GSA and should be permitted to assume that contract accordingly.

The response filed by Alberts does not squarely address the Reorganized Debtor's and Universal Care's contention that substitution can be inferred by virtue of the parties' mutual performance under the GSA.  Regardless, it is evident that the question of who is a party to the GSA presents an issue of contract law.  Specifically, if Pacifica of the Valley Corporation and Universal Care can establish that there was a novation of contract that effectively extinguished the GSA as between Universal Care and Pacific Optima, LLC and gave rise to a new GSA[12] between Universal Care and Pacifica of the Valley Corporation, they will be entitled to a finding that the Reorganized Debtor, as successor to the rights of Pacifica of the Valley Corporation, is Universal Care's counter-party to the

---

[12]  It is unnecessary to decide whether that new GSA relates back to the initial GSA entered into in 1997 as the determination that Pacifica of the Valley Corporation was a party to the 2002 GSA suffices to dispose of the issues here.  Had the transfers at issue in the adversary proceeding been made before 2002, that issue would be relevant.

GSA.[13]

California law provides that "[n]ovation is the substitution of a new obligation for an existing one. . . ." and can be accomplished "[b]y the substitution of a new obligation between the same parties, with intent to extinguish the old obligation; [b]y the substitution of a new debtor in place of the old one, with an intent to release the latter; or, [b]y the substitution of a new creditor in place of the old one, with intent to transfer the rights of the latter to the former."   Cal. Civ. Code §§ 1530, 1531.  A "[n]ovation is made by contract, and is subject to all the rules concerning contracts in general."  Cal. Civ. Code § 1532.  There is no requirement that the novation be memorialized in writing; it can instead be shown based upon the conduct of the parties.  See Porter Pin Co. v. Sakin, 112 Cal. App.2d 760 (1952); Murphy v. White, 101 Cal. App. 719, 723 (1929)

---

[13] As explained in Williston on Contracts, "[e]very bilateral contract while still executory on both sides involves both rights and duties for each party. . . . [D]uties under a contract cannot in any true sense be assigned.  It follows therefore that no bilateral contract still executory on both sides can be assigned in such a sense as to substitute fully the assignee in the place of the assignor. However, if the duties to be performed under the contract are not of such a personal character that their performance cannot be delegated, and if the rights are assignable in their nature, what can be done is: (1) A novation may be made eliminating one of the parties to the original contract and substituting another in its place; but this requires the assent of all three parties to the transaction." See 29 Williston on Contracts § 74:30, Assignability of Bilateral Contracts (4th ed., December 2005).

(novation may be shown by the acts of the parties).

The burden of proof lies with the party asserting that a novation has been consummated. <u>Howard v. County of Amador</u>, 220 Cal. App.3d 962, 977 (1990); <u>Davies Machinery Co. V. Pine Mountain Club, Inc.</u>, 39 Cal. App.3d 18, 24-25 (1974). To prove novation, it is essential "that it clearly appear that the parties intended to extinguish rather than merely modify the original agreement." <u>Howard</u>, 220 Cal App.3d at 977 (internal quotations omitted). As with most contract issues, "[t]he question [of] whether a novation has taken place is always one of intention . . . ." <u>Producers' Fruit Co. of California v. Goddard</u>, 75 Cal. App. 737 (1925); <u>O'Reilly v. Johnson</u>, 91 Cal. App.2d 729 (1949)("Whether a new agreement amounts to a novation is always a question of intention; and intention on the part of all parties that such agreement should constitute a novation must clearly appear."). Thus, Pacifica of the Valley Corporation and Universal Care have the burden to prove that Pacific Optima, LLC, Pacifica of the Valley Corporation, and Universal Care all intended that the GSA between Pacific Optima, LLC be extinguished and that a new GSA between Pacifica of the Valley Corporation and Universal Care take its place.[14]

---

[14] There exists no dispute between the contracting parties as to their shared intent to be mutually bound under the GSA. Were the court sitting in the role of fact finder, it would be entitled to place great weight on the stated intent of the alleged contracting parties because "parties to a contract are

The only reasonable conclusion supported by the current
record is that Universal Care was presented with an offer of
novation, that Universal Care accepted that offer no later than
January, 2002, and that all three parties consented to and
intended to effectuate the substitution of parties such that the
GSA as between Pacific Optima, LLC and Universal Care was deemed
extinguished and a new and otherwise identical contract arose
between Pacifica of the Valley Corporation and Universal Care.
See Manfre v. Sharp, 210 Cal. 479, 481-82 (1930) (novation
accomplished through offer and acceptance of novation and
acceptance inferred from conduct).

---

free to determine for themselves their respective rights and
liabilities so long as the purposes and effects of their
agreement are lawful . . . ." Howard, 220 Cal. App.3d at 977.
The court is thus loath to disturb a consensual contractual
agreement based upon arguments raised by a third party absent a
showing of fraud or collusion on the part of those contracting
parties. Id.; Meadows v. Lee, 175 Cal. App.3d 475, 483-84 (1986)
("If two parties enter into a contract and appear to be satisfied
with that agreement, their subsequent happiness with that
arrangement, in the absence of fraud or collusion or clear
express repudiation, should be a powerful incentive to sustain
the continued viability of that contract . . . . Furthermore,
there is a policy against interfering with contracts by third
parties."). For purposes of summary judgment, however, it is not
the court's task to weigh the evidence, but rather to determine
whether there is any evidence to support more than one conclusion
by a reasonable finder of fact.

B.

>    Pacific Optima, LLC and Pacifica of the Valley
>    Corporation made an offer of novation to Universal
>    Care.

It is the testimony of both Arlene O'Neil of Pacifica of the

Valley Corporation and Jeffrey V. Davis of Universal Care that a

series of letters, which O'Neil and Davis have attached as

exhibits to their respective declarations, were sent by brokers

of Pacific Optima, LLC and Pacifica of the Valley Corporation to

Universal Care.  Among these exhibits is a letter dated January

8, 1998, from one such broker advising the Employer Service

Representative of Universal Care as follows:

>    RE:  Pacific Optima, LLC
>         Notice of Organizational Change...
>
>    Pacific Optima, LLC is dissolving as a single employer
>    organization.  Effective January 1, 1998, Pacifica
>    Hospital of the Valley and Serra Medical Clinic will
>    exist as independent employers.  Pacifica and Serra
>    would like to continue to benefit from the competitive
>    rating that their combined size provides, but would
>    like to be set up with separate billing, claim
>    reporting and separate tax ID's (for 5500 filing
>    purposes).
>
>    Please let us know in writing how you can accomplish
>    this and also indicate any information needed for
>    completing this project.
>
>    Thank you for all of your assistance during this
>    process.  Please feel free to contact me . . . if you
>    have any questions.

By this letter, Pacific Optima, LLC and Pacifica of the Valley

Corporation communicated to Universal Care their mutual desire

for Pacifica of the Valley Corporation to replace Pacific Optima,

23

LLC as the employer sponsoring Pacifica Hospital of the Valley's
healthcare plan.[15]  The precise terms pursuant to which Pacifica
of the Valley Corporation proposed to serve as the new plan
sponsor were subsequently communicated to Universal Care in a
June 24, 1998 letter from Kelly R. Shah of McKenna & Associates
to Evelyn Norcross of Universal Care.  That letter states:

> Effective 1/1/98, Pacifica Hospital of the Valley and
> Serra Medical Clinic became separate employers and are
> no longer under the Pacific Optima umbrella.
>
> Please note the following changes accompany the above
> event:
> - Your contract(s) should identify Pacifica and
>   Serra as two separate employers.
> - The EINs for Pacifica and Serra are 95
>   4557519 and 95 3959498 respectively.
> - Julieta Mayora, Director of Human Resources
>   at Pacifica will remain the contact for both
>   plans.
> - Pacifica and Serra would like to be
>   identified as separate employers for contract
>   and plan filing purposes, but would like to
>   be rated on combined experience and combined
>   population.  Please let us know if this is
>   not possible.
> - All benefits and provisions should remain as
>   they were under the Pacific Optima contract.
> - Please note that your contract(s) for both
>   plans should state eligibility as first of
>   the month following 60 days of employment.
>   Termination of coverage is at the end of the
>   month following termination.

---

[15]  The court is mindful that these letters would constitute
inadmissible hearsay under Fed. R. Evid. 801(c) if offered for
the truth of the matters asserted therein.  The court will not
consider the letters for the truth of their content, but rather
will allow the letters to the extent they constitute verbal acts
on the part of Pacifica of the Valley Corporation and Pacific
Optima, LLC's agents, and to the extent they had an effect on
their recipient, Universal Care.

Please call either Karen Frick . . . or me with any
questions.

[Emphasis in original.]

On the current record, there can be no genuine dispute that,
by this letter, Universal Care was advised that: (1) consistent
with the January 8, 1998 letter advising Universal Care that
Pacific Optima, LLC was dissolving as a single employer
organization, Pacific Optima, LLC no longer intended to serve as
the healthcare plan sponsor on behalf of Pacifica Hospital of the
Valley; (2) Pacifica of the Valley Corporation wished to be
identified in the contract as the plan sponsor ; and (3) Pacifica
of the Valley Corporation, as plan sponsor, wished to be subject
to the same contractual terms that applied when Pacific Optima,
LLC sponsored the plan.

As a matter of law, the court finds that these
communications constituted an offer of novation by which Pacific
Optima, LLC and Pacifica of the Valley Corporation invited
Universal Care to accept their joint proposal that the GSA as
between Universal Care and Pacific Optima, LLC be extinguished
and substituted with a new and otherwise identical contract
between Pacifica of the Valley Corporation and Universal Care.
See Manfre v. Sharp, 210 Cal. 479 (1930).  Furthermore, based
upon the express references in the June 24, 1998 letter to "the
contract," what it should state, and how various entities should

25

be identified in that contract, there can be no genuine dispute

that the proposal embodied in these letters was to substitute

Pacifica of the Valley Corporation as a party to the express

written contract that existed between Pacific Optima, LLC and

Universal Care - the GSA - rather than a proposal that Pacifica

of the Valley Corporation serve as plan sponsor pursuant to an

informal arrangement not memorialized by a written contract.

Once this offer was made, it was susceptible either to acceptance

or rejection by Universal Care.

C.

> By no later than January, 2002, Universal Care accepted
> the proposal to substitute Pacifica of the Valley
> Corporation as its counter-party to the GSA.

In support of its contention that it intended to substitute

Pacific Optima, LLC as a party to the GSA as early as January 1,

1998, and in support of its contention that such substitution of

parties was in fact accomplished, Pacifica of the Valley

Corporation has offered evidence that it paid the premiums due

under the GSA, it accepted renewal rates under the contract, it

replaced Pacific Optima, LLC as the employer named on hospital

employee W-2 forms, and it submitted Forms 5500 to the IRS

identifying itself as the plan sponsor.  To demonstrate novation

pursuant to which an outright substitution of parties has

occurred rather than a mere assumption of duties, however,

Pacifica of the Valley Corporation and Universal Care have the

26

further burden of demonstrating that Universal Care agreed to

such a substitution. See California Canning Peach Growers v.

Sheridan Downey, 76 Cal. App. 1, 18 (1925)(novation cannot be

accomplished by the act of one party alone).

> 1. A reasonable finder of fact could conclude that,
> prior to January 2002, Universal Care had yet to
> accept the offer of novation and Pacific Optima,
> LLC remained a party to the GSA.

There is no dispute that the GSA continued to identify

Pacific Optima, LLC as Universal Care's counter-party until the

document was amended in 2003, and there is likewise no dispute

that the 1997, 1998, 1999, and 2001 Forms 5500/Annual

Return/report of Employee Benefit Plan all identified Pacific

Optima, LLC, not Pacifica of the Valley Corporation, as the plan

sponsor.  By affidavit, Jeffrey V. Davis, CEO of Universal Care,

testified, on the one hand, that as part of the Fall renewal

process, Universal Care "incorrectly" continued to name Pacific

Optima, LLC rather than Pacifica of the Valley Corporation as the

subscriber group.  Davis Aff. ¶6.  Davis, however, also testified

that "[s]ince at least 2002, Pacifica handled its health care

benefits as a single employer."  Davis Aff. ¶ 8.  Davis'

testimony leaves open the possibility that Universal Care did not

consider Pacifica of the Valley Corporation an independent

employer prior to 2002.  A reasonable finder of fact would be

entitled to conclude that, prior to 2002, Pacific Optima, LLC was

still a party to the GSA and Universal Care had not accepted the
offer of novation.

> 2.    When, in January 2002, Pacifica of the Valley
> Corporation accepted 2002 renewal rates on behalf
> of the hospital, to the extent the prior offer of
> novation was not accepted, this was a renewal of
> that offer and it was accepted by Universal Care.

Although the record supports varying conclusions as to
whether Universal Care accepted the offer of novation when it was
first made in 1998, by January, 2002, there can be no genuine
dispute that Universal Care had assented to the substitution of
Pacifica of the Valley Corporation as Universal Care's counter-
party to the GSA such that Pacifica of the Valley Corporation was
properly substituted as a party to the GSA it now seeks to
assume.

There is evidence in the record that in January 2002,
Pacifica of the Valley Corporation, not Pacific Optima, LLC,
accepted Universal Care's renewal rates under the GSA and did so
in writing.  Alberts has failed to offer evidence to support a
finding that Universal Care objected to Pacifica of the Valley
Corporation accepting those rates on behalf of the hospital
rather than Pacifica Optima, LLC.  There being no countervailing
evidence, the court finds that, as a matter of law, this
constituted an acceptance of the prior offer of novation to the
extent the original offer was not previously accepted by
Universal Care.

28

Pacifica of the Valley Corporation has also submitted evidence in the form of checks drawn on its accounts and made payable to Universal Care reflecting that throughout 2002, Pacifica of the Valley Corporation paid Universal Care the premiums due under the GSA, and Universal Care accepted those payments. This squarely supports Pacifica of the Valley Corporation's repeated assertion that it considered itself bound to perform under the GSA. As of January, 2002, the only evidence to support a finding that Pacific Optima, LLC remained the party bound under the contract and to support a finding that it had not been substituted by Pacifica of the Valley Corporation as a party to the GSA, is Universal Care's continued naming of Pacific Optima, LLC in the GSA documents. Although Alberts contends that this is dispositive, the record is devoid of evidence that Pacific Optima, LLC's continued to participate in the provision of healthcare benefits to the hospital as of January, 2002, that Universal Care demanded performance from Pacific Optima, LLC, after January 2002, or that Pacific Optima, LLC ever consented to the rates that became effective in 2002.

As a matter of law, the court concludes that, under the circumstances, the continued naming of Pacific Optima, LLC as a party on the documents constituting the GSA is insufficient to give rise to a triable issue of fact as to whether Pacific Optima, LLC rather than Pacifica of the Valley Corporation was a

29

party to the GSA as of January 2002.  Lanningham v. United States
Navy, 813 F.2d 1236 (D.C. Cir. 1987) (quoting Anderson v. Liberty
Lobby, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986))
(for dispute of material fact to be genuine, evidence must be
such that a reasonable jury could return a verdict for the
nonmoving party).

The only reasonable conclusion that can be drawn from
Universal Care's willingness to accept Pacifica of the Valley
Corporation's acceptance of rate renewals as binding after having
previously received written notification that Pacifica of the
Valley Corporation wished to serve as an independent employer
enjoying the same contract terms as existed between Pacific
Optima, LLC and Universal Care, and its continued acceptance of
payment from Pacifica of the Valley Corporation rather than
Pacific Optima, LLC is that by January 2002, Universal Care had
accepted Pacific Optima, LLC and Pacifica of the Valley
Corporation's offer of novation such that the contract between
Pacific Optima, LLC and Universal Care was extinguished and a new
GSA arose between Pacifica of the Valley Corporation and
Universal Care.  On this basis, the court will grant summary
judgment in favor of Universal Care and the Reorganized Debtors.

Alberts complains that Pacifica of the Valley Corporation
and Universal Care have presented an inaccurate and self-serving
picture of the contractual relationship existing between them in

order to have Alberts' preference action against Universal Care

dismissed.  The parties all concede that Universal Care stands to

benefit from the court's approval of the Stipulation of Cure

Amount because it will likely result in the dismissal of Alberts'

preference action.  The plan, as structured, provided this

economic incentive for the assumption of executory contracts, and

the court will not infer bad faith, fraud or collusion on the

part of Universal Care and Pacifica of the Valley Corporation

based on this alone.  Alberts has failed to offer evidence of bad

faith, fraud, or collusion and the court rejects Alberts'

argument accordingly.

This disposes of the motions, but the court will address

below two alternate arguments raised by the prevailing parties.

C.

> The evidence does not establish for summary judgment
> purposes that the GSA was transferred to Pacifica of
> the Valley Corporation pursuant to the Asset Purchase
> Agreement.

Universal Care and Pacifica of the Valley Corporation

contend that the GSA was transferred or conveyed to Pacifica of

the Valley Corporation in connection with the Asset Purchase

Agreement between Pacific Optima Partners and Capital Healthcare

Corporation (now DCHC).  Prior to and for a short period in early

1997, Pacifica Hospital of the Valley and its related assets were

owned by Pacific Optima Partners.  In January 1997, Pacific

Optima Partners entered into an Asset Purchase Agreement pursuant

31

to which it agreed to sell Pacifica Hospital of the Valley, its

related assets, and the assets related to Pacific Optima, LLC, to

Capital America Healthcare Corporation, predecessor by merger to

Doctors Community Healthcare Corporation.  In connection with the

closing of the APA, the purchaser, Capital America Healthcare

Corporation, identified Pacifica of the Valley Corporation as its

designee to receive the assets conveyed to it under the APA.  Two

days prior to the closing of the APA, on January 15, 1997,

pursuant to an Assignment and Assumption of Limited Liability

Company Interest, Pacific Optima Partners and Pacific Optima

Hospital Management, Inc., assigned 99.9% of their membership

interest in Pacific Optima LLC to Pacifica of the Valley

Corporation, and the remaining .1% to Paul R. Tuft.

     Section 3.9 of the APA states as follows:

     Section 3.9 Insurance; Malpractice.  Schedule 3.9 is a
     list of all policies or binders of fire, liability and
     other forms of insurance policies or binders currently
     in force relating to the Assets.  Seller warrants that
     it will not terminate any such policies on or prior to
     the Closing.

Schedule 3.9, in turn, names Universal Care as the seller's

healthcare insurance provider.  Thus, argue the Reorganized

Debtors and Universal Care, the Universal Care contract was

conveyed to the buyer - and then received by Pacifica of the

Valley Corporation as designee - as part of the purchased assets.

     Although the purchaser of the hospital, and by extension the

designee of the purchased assets, can fairly be said to have

assumed the responsibility of maintaining a healthcare insurance

plan for the benefit of Pacifica Hospital of the Valley

employees, the assumption of a duty to provide benefits is not

the equivalent of an unconditional transfer of the right to be a

party to a specific contract that was historically the vehicle

through which those benefits were supplied.  Moreover, when a

contract remains executory on both sides, as was the case with

the GSA at the time the APA was executed, a party may only be

truly substituted as a party to the contract by way of novation,

not by assumption. <u>See</u> 29 Williston on Contracts § 74:30,

Assignability of Bilateral Contracts (4th ed., December 2005).

Universal Care was not a party to the APA, and the execution

of the APA in no way reflects the assent on Universal Care's part

to a substitution of its counter-party to the GSA.  A transfer of

assets, with nothing more, is simply not the manner in which to

accomplish a substitution of parties to an executory contract.

Accordingly, Pacifica of the Valley Corporation did not, by

virtue of being the designee of the purchased hospital assets,

become a party to the GSA.

Moreover, on the current record, there remains a genuine

issue of material fact as to whether or not the GSA had even come

into existence at the time of the signing of the APA.  If there

was no GSA in existence, it obviously could not be conveyed under

the APA.  The earliest version of the GSA produced by the parties

in these proceedings is dated October 23, 1997, and was to become effective January 1, 1998.  Although Universal Care may have been providing healthcare benefits to hospital employees when the APA was executed in January 1997, there remains a genuine issue of material fact as to whether Universal Care's provision of such benefits was governed by an earlier version of the GSA that simply could not be located by the parties in connection with these proceedings, or if some other contract governed.

The question of whether there exists a version of the GSA that pre-dates the APA need not be resolved.   First, even if the GSA was in existence at the time the APA was executed, that GSA was not necessarily transferred to Pacifica of the Valley Corporation incident to the sale of Pacifica Hospital of the Valley.  Second, the record establishes that by January 1998, there was conduct leading to a substitution of parties when Pacifica of the Valley Corporation and Pacific Optima, LLC made an offer of novation to Universal Care (by which time it is undisputed that the GSA had come into existence).

D.

The GSA was not transferred to Pacifica of the Valley
Corporation as a result of Pacific Optima Partners' and
Pacific Optima Hospital Management, Inc.'s Assignment
and Assumption of Limited Liability Company Interest.

The court rejects the argument that the transfer of 99.9% membership interest in Pacific Optima, LLC pursuant to an Assignment and Assumption of Limited Liability Company Interest

34

to Pacific of the Valley Corporation immediately prior to the
execution of the APA, and the conveyance pursuant to the APA of
"Seller's right, title and interest in and to the assets and
properties, tangible and intangible, of and pertaining to or used
at or in connection with Seller's business of owning assets in
connection with, and operating Pacific Optima LLC, d/b/a HRx,"
resulted in Pacifica of the Valley Corporation's substitution as
a party to the GSA.

The Reorganized Debtor has not explained the legal mechanism
pursuant to which it contends this transfer in interest
ultimately resulted in the substitution of Pacifica of the Valley
Corporation as a party to the GSA.  In fact, Pacifica of the
Valley Corporation does not contend that it became a party to the
contract immediately upon the transfer, but rather that such
change was accomplished approximately one year later when, in
January, 1998, Pacific Optima, LLC ceased to perform employee
leasing functions on behalf of Pacifica of the Valley
Corporation.

The GSA identifies Pacific Optima, LLC as the subscriber
group, which term is further defined as "the organization or
company which has entered into this Group Subscriber Agreement
with the Plan under which benefits are made available to eligible
group members and their dependents."  The GSA provides that
"[t]he Subscriber Group may not assign this contract without the

35

prior written consent of the Plan. . . . any purported assignment
in violation hereof shall be void and unenforceable." From a
practical standpoint, Universal Care was likely indifferent to
whether Pacific Optima, LLC or Pacifica of the Valley Corporation
was the named party to the GSA, just so long as its counter-party
had the authority to contract for healthcare benefits on behalf
of the hospital employees, and was positioned to fulfill the
hospital's financial obligation under the GSA. As a technical
matter, however, the GSA prohibited Pacific Optima, LLC from
assigning the contract. Accordingly, Pacifica of the Valley
Corporation's substantial ownership interest in Pacific Optima,
LLC alone, without the assent of Universal Care, could not
effectuate an automatic substitution of parties to the GSA upon
Pacific Optima, LLC's cessation of its employee leasing
functions. Although the court has concluded above, on other
grounds, that Pacifica of the Valley Corporation was substituted
as a party to the GSA, it rejects the theory that this was
accomplished through an assignment of interest in Pacific Optima,
LLC to Pacifica of the Valley Corporation.

The court likewise rejects any suggestion that Pacific
Optima, LLC remains a party to the GSA and that Pacifica of the
Valley Corporation is now merely assuming the GSA on behalf of
this entity in which it claims a 99.9% ownership interest. The
court does not think this is the legal theory upon which the

36

Reorganized Debtors and Universal Care relied.  However, at the
November 2, 2005 hearing, Alberts complained that if the
Reorganized Debtors and Universal Care intend to proceed under
such a theory, they are estopped from doing so because the
Reorganized Debtors failed to list Pacifica of the Valley
Corporation's interest in Pacific Optima, LLC in their bankruptcy
schedules, and they failed to reflect such interest in their
statement of financial affairs.  The record simply does not
support the theory that Pacifica of the Valley Corporation is
entitled to assume the GSA <u>on behalf of</u> rather than <u>instead of</u>
Pacific Optima, LLC.[16]

---

[16]   The record lacks evidentiary support for the conclusion
that Pacific Optima, LLC remains a party to the GSA.  It did not
accept renewal rates in 2002, and as of 2003 it ceased to be
named as a party to the GSA.  Thus, the record does not support a
finding that Pacific Optima, LLC remains a party to the GSA, and
that, by virtue of Pacifica of the Valley Corporation's ownership
interest in Pacific Optima, LLC, Pacifica of the Valley
Corporation is now entitled to assume the contract on Pacific
Optima, LLC's behalf.  Moreover, a debtor is entitled to assume
its own contracts but not those of another corporation (unless
there is a piercing of the corporate veil to reach contracts held
by the other corporation, and no attempt has been made to address
that issue).

E.

> Modification of the GSA in 2003 to reflect that
> Pacifica of the Valley Corporation is the proper party
> to the contract did not violate the automatic stay.

It was not until 2003 that Universal Care and Pacifica of
the Valley Corporation actually amended the GSA to reflect that
Pacifica of the Valley Corporation, and not Pacific Optima, LLC,
is the proper party to the GSA.

Alberts urges that this post-petition correction constituted
an impermissible violation of the automatic stay because it was
undertaken without prior court approval.  The court disagrees.
The 2003 amending of the GSA to reflect Pacifica of the Valley
Corporation as Universal Care's counter-party was merely the
parties' memorialization of a pre-existing fact and does not
constitute a violation of the automatic stay.  The amendment did
nothing to alter the pre-petition status quo, and the parties
were therefore not required to seek court approval to accomplish
this clerical amendment.  Because the court has already concluded
that there was a substitution of parties no later than January,
2002 by way of novation, it is unnecessary to determine what
significance this 2003 amendment standing alone would have had on
Pacifica of the Valley Corporation's right to assume the GSA.

IV

For the foregoing reasons, Universal Care and the
Reorganized Debtors' motion for summary judgment and their
Proposed Stipulation and Order Resolving Cure Claim of Universal
Care, Inc. are granted.  Alberts' cross-motion for summary
judgment is denied.

[Signed and dated above.]


Copies to:

All counsel of record.